337 So.2d 1111 (1976)
STATE of Louisiana
v.
Darrell ALEXANDER.
Nos. 57684, 57685.
Supreme Court of Louisiana.
September 13, 1976.
Rehearings Denied October 13, 1976.
*1112 Lucius A. Hornsby, Jr., Lafayette, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Jefferson J. Moss, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
In 1971 defendant was convicted of the armed robberies of two convenience stores in Lafayette, Louisiana. He was sentenced to serve twenty-five years in the custody of the Department of Corrections. He appeals to this court raising two assignments of error, both relating to the green money bag labeled "Phil-A-Sak No. 12."
Defendant contends the bag was seized during a search of his residence allegedly conducted without a valid search warrant. The bag was found in the garage next to defendant's residence at 245 Pearl Street in Lafayette, although the search warrant and the application therefor refer to a residence at 243 Pearl Street. Defendant's attack on the warrant is based on this discrepancy.
When police arrested defendant's alleged coparticipant in the robberies, Tommy Alexander, he told them they would find money and weapons from the robbery in the garage of defendant's residence at 243 Pearl Street. This information was submitted to the trial court, and a warrant issued for the "premises known as 243 Pearl StreetLafayette, Louisiana, owned by the Reverend Edwin Alexander and occupied by Darrell Alexander." The police found the money bag in an old coat hanging in the garage of defendant's residence.
The following testimony was given by witnesses at the motion to suppress.
Officer Lester Viator: Besides knowing the municipal number of defendant's residence as given by Tommy Alexander, the officers had a description of the house they were to search and knew it was near a church. When they arrived, they saw the house did not have a municipal number on display, so they asked defendant's father if they were at 243 Pearl Street and he responded affirmatively. They searched the garage and found the bag.
The Reverend Edwin Alexander: The Reverend's house is at 245 Pearl Street where he lives with his daughter, her two children and his son, the defendant in this case. When the officers arrived, they did not speak to the Reverend, they did not show him a warrant, they in no way indicated what they were looking for, and they did not give him a receipt for anything they may have found. He did not give them permission to search his son's bedroom inside the house.
Verna Alexander: Ms. Alexander lives at the home with her father, Reverend Alexander. When she arrived home, the police were already searching the garage. They would not speak to her or to her father other than to ask him whether they could search defendant's bedroom inside the house. Reverend Alexander give them permission to search the bedroom, saying "there was nothing in there." The police found nothing during their search of the bedroom. She did not see whether police found anything during their search of the garage, but they did not give her a receipt for anything they may have found.
At trial, Verna Alexander testified that the Reverend's house is "to the side and behind" the church at which he preaches. The church bears the number 245, and it faces Pearl Street. There was no number on the house itself.
In his first assignment of error, defendant relies on this court's opinion in State v. Lee, 247 La. 553, 172 So.2d 678 (1965), to argue that the warrant under which the house was search was invalid.
In Lee, the sworn affidavit upon which the search warrant was issued referred to a *1113 residence at 2127 Bienville Street in New Orleans. But when officers arrived at the house which they later searched, they found it had a different municipal number than that cited in the warrant and the underlying affidavit.[1] They telephoned the trial court who had issued the warrant and informed him the number should read 2123 rather than 2127 Bienville Street. The judge approved a change in the warrant.
For the following cited reasons we held the warrant invalid:
". . . `Search warrants are of such grave importance which they may be amended, if at all, only by the officer issuing them, and then only in conformity with the affidavits or depositions on which they are based. Thus, a warrant is invalid if it is amended by the executing officers, even on the consent of the issuing officer, or on a telephone communication from him. Moreover, the issuing officer cannot amend the warrant unless the affidavit itself is so amended as to conform to the proposed change or unless the original affiant performs some corporal act which would constitute an oath. * * *'
. . . `There is a valid reason for such rule as it has been established that when a judicial officer issues a warrant, he does so after a determination of probable cause, and is presumed to have examined the affidavits, supporting evidence and complied with all the prerequisites of the mandates of the enacted laws and constitutional authority. To permit the modification of a writ, after it has left the possessive jurisdiction of the judicial officer, and allow a third person to make amendments or corrections thereto, would destroy the spirit and intent of the constitutional and legal import of the instrument. Suffice it to say, that the majority rule of law concerning amendments to search warrants is thus succinctly expressed: Only a judicial officer may issue a search warrant, and the issuance thereof is a judicial function. No one else may have the right to alter, modify, or correct such writ, as in so doing, the judicial authority is usurped.'" 172 So.2d 678, 680.
And we held:
". . . The warrant directed the search of a specific, incorrect municipal number. Under no circumstances could it be held that an officer with such a warrant could take it upon himself to enter and search premises located at another number." 172 So.2d 678, 682.
To the contrary, the officers in the case before us executed the search in accordance with the description on the face of the warrant. They had no reason to believe the municipal number of the house they searched was other than 243 Pearl Street. Furthermore, when they arrived they confirmed through Reverend Alexander himself that the address was 243 Pearl Street, that the house was the Reverend's and that defendant resided there.
This is not a case where a police officer has taken it upon himself to enter and search a premises located at a municipal number not included in the warrant, and defendant's reliance on State v. Lee, supra, is misplaced.
Nor does defendant have a complaint that the municipal number was later discovered to be other than 243 Pearl Street. The house itself did not display a number from which the exact municipal number could have been discerned; thus it could logically be concluded that the house would have a municipal number close to but different than that assigned to the church. The additional information that the house was owned by Reverend Alexander and that defendant resided there supplied ample specificity in a town the size of Lafayette.
This assignment lacks merit.
*1114 In defendant's brief to this court his second assignment of error contends "there was no connection between the materials recovered and defendant . . . it can be ascertained that there is no way wherein the ownership of any old coats hanging in the garage belonged to defendant."
We note initially that once the bag was properly admitted into evidence, it was for the jury to determine whether there was adequate proof to connect it with defendant. We may not review this jury question (Art. 5, § 5(C), La.Const.1974); but we may review the trial court's determination that an adequate foundation had been laid for admitting the bag into evidence. We consider defendant's objection in brief as an objection to the evidentiary foundation for the admission of the money bag.
The record before us shows that one of the robberies occurred at Phil-A-Sak Store No. 12. It further shows that after taking money, the robbers told the victims to give them two bottles of whisky and to "put it in a bag." There was no showing that this bag was the same bag later discovered in defendant's garage.
However, when the State offered the bag into evidence at trial, defendant made only the following objection:
"MR. BEARD: . . . I will object on the basis that the search warrant did not apply to the garage and that the bag is
THE COURT: I'll overrule your objection.
MR. BEARD: To which said ruling, Your Honor, I respectfully object, reserve a bill of exception, making part and parcel thereof the testimony, the State Exhibit No. 2 and all testimony in connection therewith by Det. Broussard and Your Honor's ruling."
This is not an objection to the evidentiary foundation for the admission of the bag, or even to a purported lack of connection between the bag and defendant. Thus, defendant may not raise this ground on appeal. State v. McCormick, 272 So.2d 692 (La.1973); State v. Evans, 249 La. 861, 192 So.2d 103 (1966).
The case before us demonstrates well the reason for this rule. Had he made known at trial the ground he seeks to raise on appeal, any missing link in the evidentiary foundation might have been supplied.
This assignment lacks merit.
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[1] Though the State explained that the discrepancy in the municipal number was merely typographical and that the house searched was indeed the house referred to in the warrant and in the application, that evidence was not properly before the court. Thus it was not considered.