392 So.2d 403 (1980)
STATE of Louisiana
v.
Blaise J. MANZELLA.
No. 80-K-1496.
Supreme Court of Louisiana.
December 15, 1980.
Dissenting Opinion January 9, 1981.
*404 William J. O'Hara, III, Bernard E. Burk, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., David L. L'Hoste, Kevin McNary, Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.
Defendant Blaise J. Manzella, charged with pornography involving juveniles (R.S. 14:81.1) and aggravated crime against nature (R.S. 14:89.1), seeks review of the trial court's ruling denying suppression of evidence seized pursuant to a search warrant which incorrectly listed his address as 6176 Pontchartrain Boulevard in the city of New Orleans.[1] Because the United States Constitution, Amendment IV, and the Louisiana Constitution Article 1, § 5, require the warrant to "particularly describ[e] the place to be searched," we reverse the ruling on the motion to suppress. See also C.Cr.P. art. 162. Relator's alternate contentions regarding, as to the warrant, staleness of the information and the reliability of the informant need not be addressed.
Acting on information from a named informant, police obtained a search warrant for 6176 Pontchartrain Boulevard. The application for the warrant describes the premises to be searched as a "One (1) story, brick frame double residence."
Defendant lives in the front portion of a brick double located on the corner of Pontchartrain Boulevard and 18th Street. Defendant's apartment fronts on Pontchartrain Boulevard and bears the municipal number 6178 Pontchartrain. On the 18th Street side of the house is a common patio shared by defendant and the occupant of the rear portion of the house. An iron fence with two gates separates this patio from the street. The gates require separate keys to unlock them and each gate has its own doorbell. A mailbox with the address 6176 is on or beside the gate which is farther away from Pontchartrain Boulevard. Defendant's gate, which is the one nearer Pontchartrain Boulevard, has no address or mailbox. Rather, his mailbox is on the front of the house, facing Pontchartrain Boulevard, and has the numerals 6178 on it. Defendant's kitchen and bedroom both have doors opening directly onto the patio on 18th Street and the kitchen door has the number 6178 on it.
In executing the warrant, the police rang the doorbell at the gate with the mailbox marked 6176, the number appearing in the warrant. When a woman answered the door right beside the locked gate bearing the number 6176, the police asked her whether this was 6176 Pontchartrain Boulevard. She answered affirmatively and the police next asked whether it was the residence of Blaise Manzella. The woman, who was defendant Manzella's sister, informed police that Mr. Manzella lived in the other half of the house.
The police then rang the bell on the other gate and defendant answered the bell. Defendant asserts that the police came through the gate, went into his kitchen, the door which is to the right of the gate and from there, within the house, proceeded into his bedroom. The police executing the warrant testified that they went through the gate, turned to the left and entered defendant's bedroom directly from the patio.[2]
*405 A search warrant must describe with particularity the place to be searched. U.S.Const., Amend. IV; La.Const. art. 1, § 5; C.Cr.P. art. 162. As we said in State v. Cobbs, 350 So.2d 168, 177 (La.1977):
"The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient."
Thus, a minor error in the description of the premises to be searched does not necessarily render the evidence seized inadmissible. State v. Korman, 379 So.2d 1061 (La.1980); State v. Petta, 354 So.2d 563 (La.1978); State v. Alexander, 337 So.2d 1111 (La.1976). However, our decisions in the cited cases turned on special circumstances present in those cases.
In Korman, the search warrant authorized the search of 6656 Harry Drive, Apartment # 119. The correct municipal number was 6636 Harry Drive, the address on the search warrant being that shown on the sign for the Georgetown Apartments and not the municipal number for the individual building in which apartment # 119 was located. Nevertheless, we upheld the search warrant as sufficiently descriptive of the place to be searched because there was only one apartment numbered 119 in the Georgetown Apartments complex. We noted that "there was little possibility that an apartment not intended to be searched could have been searched by mistakeas indeed it was not." 379 So.2d at 1063.
The warrant in Petta authorized a search of 1433 Crete Street, Apartment C, and described the premises as a two-story pink stucco house trimmed in white. In actuality, the address of the pink stucco house was 1435 Crete Street, there being no 1433. The house did not display a street number, but was separated only by an alley from an adjacent residence showing the number 1431. Observing that "a description is sufficient when it reasonably enables the searching officers to ascertain and identify the place alone intended to be searched," we found that the description in the search warrant was sufficiently particular. 354 So.2d at 564, 565.
The facts of Alexander are similar to those of Petta. The warrant specified a non-existent street number, 243 Pearl Street. The police searched a house which had no number on it but which apparently was somehow designated 245, the very same number adorning a next door church. We upheld the search because it was logical that the house "to the side and behind the church," would have a number close to but different from the church. 337 So.2d at 1113. It was reasonable for the officer seeking the warrant to assume that the address of the residence would be 243 Pearl Street and the description of this number in the warrant would logically facilitate a search of the unnumbered residence adjoining the church. The house searched was the place intended to be searched. That this building, for some municipal purposes, was designated 245 Pearl Street was therefore irrelevant for the purpose of the search warrant.
In the case before us, unlike Petta and Alexander, we have a warrant for an actual address. Unlike the warrant in Korman, this warrant is not for the only complex *406 apartment bearing the described number although naming the wrong building of the complex. Indeed, police were informed that defendant Manzella lived in the very apartment they sought to search and their information was erroneous.
The apartment which was searched by the police was not "particularly described" in the warrant. In fact, another apartment, not defendant's, was so particularly described. The description employed would not have prevented the search of the wrong premises; rather, the description would have facilitated search of the wrong premises. That 6176 Pontchartrain was not searched was due to the lucky happenstance that defendant's sister answered the bell at 6176 Pontchartrain Boulevard and informed police that defendant lived at 6178 rather than 6176.
The constitutional provision regarding search warrants is not a set of meaningless words, but is a real stricture on the right of the state to search a citizen's home, business or vehicle. Less than candid and forthright application of the constitution disserves the law. The fact that ultimately the correct individual's apartment was searched and incriminating evidence seized does not obviate the violation of a constitutional provision designed not to shield the criminal but to protect the remainder of society.

Decree
Consequently, the trial judge erred in denying defendant's motion to suppress and we hereby reverse that ruling and order the evidence seized pursuant to the search warrant suppressed.
RULING REVERSED.
WATSON, J., concurs and assigns reasons.
BLANCHE, LEMMON and MARCUS, JJ., dissent and assign reasons.
WATSON, Justice, concurring.
The State's theory is that the informant and the affiants made an inconsequential error in noting defendant's residence number. However, since the observation was made approximately five months before the search warrant was issued, it is entirely possible that defendant moved from one half of the double apartment to the other during the interim.
I respectfully concur.
BLANCHE, Justice (dissenting).
The circumstances surrounding the informant's entry into the apartment in which the defendant lived, and the physical layout of the residential structure (a one-story, brick frame double residence bearing the municipal number 6176 Pontchartrain), is a sufficient description of the premises, even though the warrant described defendant's sister's apartment instead of that of defendant.
Furthermore, in spite of the error (i. e., defendant actually lived at 6178 Pontchartrain Blvd.), the defendant's dwelling was the only one searched. The trial judge correctly denied the motion to suppress.
LEMMON, Justice, dissenting.
As required by La.Const. art. 1, § 5 (1974) and C.Cr.P. art. 162, the warrant in this case particularly described the place to be searchedthe one story double residence of Blaise Manzella. The warrant, however, inaccurately listed the municipal number of the half of that double residence occupied by Manzella. This case more closely approaches those "minor inaccuracy" cases, cited by the majority, in which this court has refused to order suppression. Moreover, when the inaccuracy of the warrant was discovered, the police thereafter acted reasonably, and the United States Constitution only prohibits unreasonable searches.
The error in this case was a reasonable and understandable one, and was not of the type that results from arbitrary action or bad faith on the part of the law enforcement officers. The officers listed the number that appears on the gate into the common patio pointed out by the informer, and that number was, in fact, the only numerical designation that appeared on that side *407 of the building through which the informer had usually entered.
The law enforcement officers in this case first established probable cause and then sought judicial approval of that probable cause; they executed the warrant promptly after its issuance; and, in executing the warrant, they restricted their search to the area of the house actually occupied by the defendant. In the final result, there was no invasion of anyone's privacy which was not judicially approved based upon a proper showing of probable cause.
The exclusionary rule is designed to deter police misconduct and should not be applied to acceptable conduct in which a good faith error occurs. Since the error has nothing to do with guilt or innocence, suppression of the evidence because the officers made an understandable and reasonable mistake in getting the number off the wrong mailbox places an unduly technical obstruction in the path of the search for the truth.
Our past cases dealing with minor inaccuracies have, in effect, recognized that the exclusionary rule should be hesitatingly invoked when judicially approved, good faith efforts at compliance have been made. To invoke exclusionary policy in a case of this nature neither enhances the accuracy of the fact finding process nor compels respect by law enforcement officers for the Fourth Amendment's commands.
I would affirm the denial of the motion to suppress.
MARCUS, Justice (dissenting).
Under the facts of this case, I consider that the warrant described the place to be searched with sufficient particularity to satisfy the constitutional requirement. Accordingly, I respectfully dissent.
NOTES
[1] The evidence which defendant seeks to suppress is mostly a number of photographs of nude juvenile males.
[2] The trial judge thus heard conflicting testimony regarding which door the police entered. The testimony also creates a bit of confusion concerning the physical location of the doors opening onto the patio. Photographic exhibits which were filed into evidence apparently cannot be located at the present time. At oral argument, the state presented us with a photograph of the patio entrance to the two apartments. From this photograph we can probably conclude that Manzella's kitchen door is immediately inside his gate and to the right thereof while his bedroom door, also opening into the patio, is to the left of his kitchen door and on the patio wall parallel to 18th Street. The policeman's testimony that he entered the gate and turned to the left apparently means that he proceeded to the left of the kitchen door after entering the gate. In any event, it seems from the evidence that the two apartments, each basically rectangular in shape and joined in the middle (with 6178 on the corner of Pontchartrain Boulevard and 18th Street, and 6176 occupying the area adjacent to 6178 and having street access only from 18th Street), share a common patio with gate, kitchen and bedroom doors for the two apartments located respectively on the right and left of the patio upon approaching the patio from 18th Street.