397 So.2d 1326 (1981)
STATE of Louisiana
v.
Amanda SMITH.
No. 80-K-2546.
Supreme Court of Louisiana.
April 6, 1981.
Rehearing Denied May 18, 1981.
*1327 Roy V. Ladner, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., David J. Cortes, Asst. Dist. Atty., for plaintiff-respondent.
CHEHARDY, Justice Ad Hoc.[1]
On January 9, 1980, officers of the New Orleans Police Department obtained a search warrant authorizing the search of a residence located at 1821 Carondelet Street in New Orleans. On the face of the warrant, the typewritten address is partially crossed out ("Ave." is changed to "St.") and the phrase "Bottom, right door" is added. The record does not disclose if these potentially crucial amendations were casual notes by counsel or if they were corrections made by the affiants and authorized by the issuing magistrate. See, State v. Welsh, 371 So.2d 1314 (La.1979), address change proper were authorized by issuing magistrate. Since the legitimacy of these additions to the warrant is not made clear by the record we will treat the warrant as if these alterations were never made. In any event, in our opinion, the legitimacy of these alterations is not dispositive on the issue of the warrant's validity.
The application for the search warrant describes the structure in which the residence is located as a "* * * Two (2) story wooden framed house, with three white columns in front, picture window in front of residence * * *." The application also repeats the 1821 address and notes that no apartment number is applicable. In execution of the warrant, however, police officers searched defendant's residence at 1819 Carondelet, the second of the two units in the structure at 1819-1821 Carondelet. Several pistols and a variety of narcotics were obtained in the search. Consequently the defendant, a convicted felon, was charged by bill of information with possession with intent to distribute phenmetrazine (preludin), pentazocine (talwin), propoxyphene (darvocet), and flurazepam (dalmane). Defendant was also charged with being a felon in possession of a firearm, violations of La. R.S. 40:967 (one count), La.R.S. 40:969 *1328 (three counts) and La.R.S. 14:95.1 (one count). Phenmetrazine is a schedule II drug; pentazocine, propoxyphene, and flurazepam are schedule IV.
Defendant was arraigned and pleaded not guilty on all counts on February 7, 1980. On April 22, defendant filed a motion to suppress. The trial court ruled and denied the motion on October 17, 1980. The matter is now before this Court on a writ by the defendant seeking review of this ruling.
In assignment of Error No. 1 defendant contends that the trial court's ruling was in error because the description of defendant's residence contained in the warrant lacked the requisite particularity.
Both the United States and Louisiana Constitutions provide that no warrant shall issue unless based on probable cause, supported by oath or affirmation "and particularly describing the place to be searched * * *." United States Constitution, Amendment IV; Louisiana Constitution, Article I, § 5; see also, La.C.Cr.P. art. 162; State v. Cobbs, 350 So.2d 168 (La.1977).
The object of the particularity requirement is to prevent the search of the wrong premises. As this Court said in State v. Cobbs, supra at 171:
"* * * If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. * * *"
Hence, "a minor error in a portion of the description of the premises to be searched does not invalidate the search." State v. Korman, 379 So.2d 1061, 1063 (La.1980); cf., State v. Manzella, 392 So.2d 403 (La.1980) (where warrant authorized search of apartment at 6176 Ponchartrain Boulevard and executing officers knocked on that door first, error in description so great as to invalidate search of accused's apartment at 6178 Ponchartrain Boulevard).
In some instances this Court has found that information contained in the affidavit may serve to "particularize" an otherwise general or misleading description in the warrant such that the warrant description is sufficient. In State v. Hysell, 364 So.2d 1300 (La.1978), this Court reviewed the sufficiency of a description which designated a street address but did not indicate which of two apartments at that address was to be searched. Observing that in the affidavit the officers identified the place to be searched as "on the east side above Alice's Beauty Salon closest to [the street]" and that an informant had pointed out the east side apartment, this Court stated: "Under these circumstances we find that the description in the warrant was sufficient to insure that the officers who in fact were to search the apartment would not search the wrong apartment." 364 So.2d at 1305.
In the case at bar, the executing officers received word from a confidential informant that a "Mandia Smith" was trafficking in narcotics; the informant also apparently indicated the two-unit building at XXXX-XXXX Carondelet. Setting up surveillance, the officers observed activity which experience might indicate was typical of narcotics distribution. Of particular importance is that they were able to observe unknown persons approach "the front door," knock, and gain admittance. The officers also noted "* * * only one municipal number visible that being 1821 Carondelet located on a white column to the left of the front door as you face the residence * * [and] a picture window on the right side of the front door."
Photographs introduced at the motion to suppress plainly show two separate street numbers affixed to the structure at 1819 and 1821 Carondelet. These exhibits also show, however, that the building has one street level apartment and one upper apartment. The upper unit is reached by means of an interior stairway; the photographs reveal no street level door to this stairway. In fact, a close examination of one of the photographs reveals what may be a nonfunctional door hinge on the lower left portion of the stairway door frame. This doorway has a column to the left bearing 1821; to the right, a door to the street level *1329 apartment. The street level apartment, on the other hand, has a visible door, a column to the left bearing 1821, and to the right a picture window.
Reasonableness would dictate that the warrant, after being excised of the error, would lead a reasonable police officer to search the bottom residence (1819 Carondelet). The warrant application shows that the house was mistakenly thought by the police to contain only one residence, i. e., 1821 Carondelet. But reading further the warrant application states, with verification by references to photographs submitted in evidence by the defendant, that "there is a picture window on the right side of the front door." Clearly this designates "the front door" as the point of entry to the residence to be searched. This, of course, is the defendant's residence on the bottom floor. There are no columns on the second floor and this of course disposes of any argument that the warrant's description could just as reasonably refer to the door on the second floor, which is also to the left of a picture window. The door described in the warrant is that which is located to the right of the column bearing 1821. Since there are no columns on the second floor, "the front door" necessarily refers to one of the two entrances on the bottom floor.
We next must determine which of the two entrances on the bottom floor is to be considered as the front door of the residence to be searched.
An examination of defendant's photographs establishes that there is only one door and that is the door to defendant Smith's residence. The entrance at the extreme left in the photograph is an entrance to a staircase leading to the second floor residence from the inside of the building. Looking at the description of the residence to be searched, absent the erroneous address, we have no hesitancy in concluding that the defendant's premises was still described in sufficient detail to enable the officers to locate and search the premises with reasonable certainty.
Under these circumstances, this case is more analogous to State v. Hysell, supra, than State v. Manzella, supra. Like Manzella the warrant authorized the search of the wrong apartment: 1821 instead of defendant's 1819. Unlike Manzella, however, and similar to Hysell, the affidavit contains additional information which makes it clear that the officers observed suspected activity at 1819: the affidavit indicates the door with the 1821 column to the left and the picture window to the right. Finally, again like Hysell, the affiants were executing officers. Thus, the description in the warrant was sufficient to insure that the officers who in fact were to search the apartment would not search the wrong apartment. That 1819 Carondelet was searched was not due to "lucky happenstance." Cf. State v. Manzella, supra. We find no merit in this assignment of error.
By assignment of Error No. 2 defendant contends that the application for the search warrant contains intentional misrepresentations, rendering the warrant invalid.
Defense exhibits filed at the motion to suppress clearly indicate that the structure containing defendant's apartment bears two separate municipal numbers1819 and 1821. These numbers are black metal attached to white columns. The affidavit to the warrant, however, indicates that after surveilling this structure for approximately one hour, commencing at 7:30 p. m. and ending sometime after 8:15 p. m., the affiants observed "only one municipal number visible that being 1821." Defendant contends that, under the circumstances, this statement evidences an intentional misrepresentation rendering the warrant invalid. In the alternative, defendant argues that if the misrepresentation was accidental, the erroneous statement must be read out of the warrant, destroying the requisite particularity of description.
State v. Rey, 351 So.2d 489 (La.1977), is the seminal Louisiana case on the effects of misrepresentation in the search warrant affidavit. In Rey, this Court observed:
"Because the invasion of home and privacy cannot be justified by misrepresentations, and in order to insure that the magistrate, and not the affiant, determines *1330 probable cause, this court has recognized on numerous occasions the defendant's right to traverse the allegations made by the affiant. State v. Melson, 284 So.2d 873 (La.1973); State v. Giordano, 284 So.2d 880 (La.1973); State v. Cox, 330 So.2d 284 (La.1975); State v. Tassin, 343 So.2d 681 (La.1977). We have held that minor inaccuracies in the affidavit may not affect the validity of the search warrant (e. g. State v. Thomas, 329 So.2d 704 (La.1976); State v. Chaffin, 324 So.2d 369 (La.1976).
"The Fifth Circuit Court of Appeals was faced with this problem in U. S. v. Thomas, 489 F.2d 664 (5th Cir. 1973), cert. denied, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). That court noted that when faced with an affidavit containing inaccurate statements the preferred approach is to excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. If, however, the misrepresentations were intentionally made, a different result is required. Because these distorted statements constitute a fraud upon the courts and represent impermissible overreaching by the government, a warrant based on an affidavit containing intentional misrepresentations must be quashed." 351 So.2d at 491-492.
This Court concluded by adopting the approach described by the Fifth Circuit. See e. g., State v. Ogden, 391 So.2d 434 (La. 1980), No. 67,608; State v. Paster, 373 So.2d 170 (La.1979); State v. Huckaby, 368 So.2d 1059 (La.1979).
This Court has recognized, however, that the defendant bears the burden of going forward on the allegation of misrepresentation. See, State v. Ogden, supra; State v. Paster, supra; see also, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). If he proves by a preponderance of the evidence that the affidavit contains false statements, then the burden shifts to the state to prove the allegations in the affidavit are true. State v. Paster, supra. After both parties have presented their evidence, the trial court must decide whether the statements are false, and, if so, whether the misrepresentation was intentional on the part of the affiant. If intentional, the warrant should be quashed; if unintentional, then the warrant is tested for probable cause without reference to the incorrect facts. State v. Paster, supra.
The record does not support a finding that the statements made were intentional falsehoods but apparently unintentional errors. Therefore, examining the warrant without reference to the incorrect facts it is our determination that there is sufficient description of the premises to be searched and the warrant meets the test of probable cause. The issue is whether the affiants were truthful, not whether the informant was truthful. This is because if the informant lied but the affiants reasonably believed him, it cannot be said that the officers acted without probable cause. State v. Paster, 373 So.2d at 174, n. 1. The surveillance was conducted after sundown in January from an unspecified distance at the corner of Carondelet Street and St. Mary Street. It is quite possible that at that time, under those circumstances, the only number visible was 1821. However, even a mere "misleading implication" must be excised from the warrant affidavit. See State v. Koncir, 367 So.2d 365 (La.1979). Therefore, the only misleading implication is that the structure bore only one number. Excising that error, the warrant still identifies the apartment building as bearing at least one number1821. Accordingly, the affidavit is substantially intact despite this excision. The description is adequate. Probable cause is not vitiated.
The ruling of the trial court is affirmed.
NOTES
[1] Judges Garrison, Chehardy, and Barry of the Court of Appeals, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Blanche, and Lemmon.