408 So.2d 1280 (1982)
STATE of Louisiana
v.
Jonas M. JOHNSON, Jr.
No. 81-K-1598.
Supreme Court of Louisiana.
January 25, 1982.
*1281 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Kendall P. Greene, Louise S. Korns, Asst. Dist. Attys., for plaintiff-relator.
Ralph Capitelli of Capitelli & Bencomo, New Orleans, for defendant-respondent.
BLANCHE, Justice.
Defendant Jonas Johnson was charged in a single bill of information with theft (R.S. 14:67) and receiving stolen things (R.S. 14:69), pursuant to the alternative charging procedure specifically authorized by C.Cr.P. art. 482. On March 30, 1981, a motion to suppress evidence found at Johnson's residence was submitted to the trial court challenging the validity of the warrant authorizing the search of defendant's home. On May 11, 1981 the defense motion was granted. On application by the state, we granted writs to determine the correctness of this ruling by the trial court.
In the motion to suppress, the defense attacked the warrant in question on three grounds. Because the trial judge did not assign reasons in granting the motion to suppress, each of these asserted defects will be discussed fully. First, defendant contended that the affidavit in support of the warrant failed to state probable cause to believe that a crime had been committed and that evidence of criminal activity would be found at Johnson's residence. The warrant affidavit recited the following facts:
(1) On December 19, 1980, James Lambert, an employee of Mon-Arc Welding, Inc. was delivering merchandise to a repair shop *1282 on St. Louis Street when he was approached by an unknown black male. This stranger proposed that Lambert allow him to trade empty cylinders for the full containers of acetylene and oxygen gases on the Mon-Arc Welding truck. The unknown man also offered to pay Lambert a certain sum for each full cylinder well below the cost which Mon-Arc charged its regular customers for the containers, and stated that this same arrangement had been acceptable to another Mon-Arc deliveryman, identified only as "Slim".
(2) When informed by Lambert that company policy prohibited the sale of the cylinders directly off the truck, the stranger became insistent.
(3) Lambert refused to sell the cylinders, but asked for time to think over the proposal. The unknown man then gave Lambert a business card reading "J. Johnson & Sons, General Contractors, 2902 St. Peter Street, 482-9974", pointed to the name and said "That's me." At that time Lambert noticed a New Orleans Police Department Badge. Johnson admitted that he was a police officer and assured Lambert that he had nothing to fear.
(4) Johnson also pointed out a repair garage in the 2300 block of St. Louis Street and told Lambert that his friend also had some empty cylinders which he wanted to give Lambert under the same conditions.
(5) Returning to the Mon-Arc office, Lambert informed Ashton Fischer, the company president, of the conversation. Fischer called the Internal Affairs Division of the New Orleans Police Department and a meeting was arranged for December 23, 1980.
(6) At the meeting, Lambert and Fischer gave statements about the incident to Agents Johnston and Noble. The Personnel Division of the New Orleans Police Department informed these agents that Officer Jonas Johnson's address was listed as 2902 St. Peter, and his telephone number as 482-9974. The New Orleans telephone directory also listed a Jonas Johnson, Sr. at that address and telephone number.
(7) Lambert positively identified Johnson's picture from a photo lineup of several New Orleans Police Department Officers.
(8) Lambert was given a tape recorder and cassette and instructed to call Johnson. During the call, Lambert was to ask Johnson if he understood that the full containers supplied to him under the agreement would be stolen.
(9) Lambert returned this equipment on December 24, 1980 and informed Agent Noble that the call had been made on December 23, 1980. The recording removed all doubt that Johnson was aware of the criminal nature of the transaction.[1] The cylinders were to be delivered on December 29 to the repair garage in the 2300 block of St. Louis Street. The voice on the tape was identified as that of Officer Jonas Johnson.
(10) On December 29, 1980, Agent Noble met Lambert at Mon-Arc Welding and recorded the serial numbers of the cylinders to be delivered to the garage on St. Louis Street. The serial numbers were listed on the front of the warrant.
(11) Agent Willie Carter set up surveilance at a location near the repair garage. The delivery could not be made, however, as the repair shop appeared to be closed.
(12) Lambert then called Johnson, and the defendant instructed him to deliver the cylinders to his home at 2902 St. Peter Street. Agent Carter set up surveillance of that address and soon observed Lambert make the deliver of the cylinders to Johnson's home.
(13) Lambert informed Agent Noble that the delivery had been made and that Johnson had paid him partially in cash and partially by personal check.
(14) Lambert remains ready to testify against Johnson in court.
(15) The agents have probable cause to believe that the stolen property is in the residence at 2902 St. Peter Street.
*1283 Article 1, § 5 of the Louisiana Constitution of 1974 requires that a search warrant may issue only upon an affidavit establishing probable cause to the satisfaction of an impartial magistrate. C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Tranum, 384 So.2d 367 (La.1980); State v. Morgan, 376 So.2d 99 (La.1979).
According to the defense argument, the instant warrant affidavit established consent to the transfer of the cylinders and negated criminal intent on the part of the defendant, thus mandating a finding of no probable cause. In support of his contention, defendant cites 18 A.L.R. 174, which deals with the concept of active participation by the owner of property in a larceny case:
"Where the owner, in person or by his duly authorized agent, suggests to the accused the criminal design, and actively urges, co-operates with, and assists the accused in the taking of the goods, such conduct amounts to a consent of the taking, and the criminal quality of the act is wanting.
* * * * * *
The reason is obvious, viz.: The taking in such cases is not against the will of the owner, which is the very essence of the offense, and hence no offense, in the eye of the law, has been committed. The offender may be as morally guilty as if the owner had not consented, but a necessary ingredient of legal guilt is wanting." See United States v. Whittier (1978), 5 Dill 35, Fed.Cas. No. 16,688.
This same annotation was quoted by this Court in State v. Natalle, 172 La. 709, 135 So. 34 (La.1931), 135 So. at page 36. In Natalle, the defendant was convicted of receiving stolen property and challenged his conviction on the ground that the owner of the property stolen had consented to its taking. The defendant, along with his son Mike, had sought the aid of Sam Shepherd in the commission of a burglary of a wholesale tobacco warehouse. Unknown to the defendant, Shepherd informed local police of the contemplated burglary. The defendant had not specified which of several warehouses would be burglarized, so the police called a meeting of all local wholesale dealers. At that meeting, the wholesalers were requested to mark their goods, leave them in the warehouses and lock the doors, without otherwise interfering with the burglars' plans. The burglary was committed as planned by Shepherd and Mike Natalle and the goods were deposited at the home of the defendant where they were later seized.
In rejecting the argument of defendant that the owner of the goods had consented to the taking, this Court emphasized that the owner did nothing to induce or tempt the defendant to commit the burglary. "The criminal design and intent to take the goods originated, independently, in the minds of those who took them and Bacon [the owner] did no more than passively assent to the carrying out of their designs." State v. Natalle, supra, 135 So. at p. 36.
In order to consent to the theft of his property, an owner must do more than passively assent to the taking. Where the criminal intent or design is neither suggested nor ratified by the owner, he may even facilitate the taking of the goods in order to detect the thief. The warrant affidavit in this case established that the intent to steal the cylinders, or to purchase cylinders stolen from Lambert's employer, originated in the mind of the defendant. The defendant first approached Lambert and sought to buy the acetylene gas cylinders at a greatly reduced price. When Lambert informed the defendant that the cylinders could only be purchased through the office of his employer, Mon-Arc Welding, the defendant became insistent and pressed Lambert to concur *1284 in his criminal design. Further evidence of defendant's criminal intent was obtained in a tape recorded conversation between Lambert and the defendant.
We need not find that the affidavit negated all question as to the defendant's guilt in order to maintain the warrant. A showing of probable cause for issuance of a search warrant requires much less evidence than proof beyond a reasonable doubt. State v. Ogden, 391 So.2d 434 (La. 1980). Magistrates and courts must test and interpret affidavits in support of the issuance of search warrants in a commonsense and realistic fashion. State v. Weinberg, 364 So.2d 964 (La.1978). Applying this standard, we are unable to say that the instant warrant affidavit failed to state probable cause that an offense had been committed and that evidence of criminal activity could be found at the defendant's residence. The evidence seized pursuant to the search warrant should not have been suppressed on this ground.
Second, the defense asserted that the photo lineup described in paragraph 7 of the warrant affidavit was improperly conducted, yielding an inadmissible identification of the defendant. The defendant maintained that this illegal identification was the basis of the later search of his residence, mandating a finding that the evidence seized must be suppressed as the "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Suppression of evidence under the reasoning of Wong Sun requires a finding that discovery of the evidence is the direct result of some "primary illegality". Where the evidence is discovered "by means sufficiently distinguishable to be purged of the primary taint", that evidence may be fully admissible.
At the hearing on the motion to suppress, Officer Johnson testified as to the conduct of this photo lineup: James Lambert was shown photographs of all males named Johnson employed by the New Orleans Police Department. Officer Johnson freely conceded on cross-examination that an identification from a lineup so conducted would not be sufficient for courtroom purposes. He testified that the lineup was conducted for the assistance of the Internal Affairs officers in their administrative investigation.
Although procedurally defective, we cannot agree that this photographic identification was the primary basis of the later seizure of evidence from the defendant's residence.
The defendant was the first to identify himself in this case. As he handed a business card with the name `J. Johnson & Sons' to James Lambert, the defendant pointed to the name on the card and said, "That's me." That card also contained the address of the residence later searched, 2902 St. Peter Street. During his initial conversation with James Lambert, the defendant did not conceal the fact that he was a police officer. The New Orleans Police Department's personnel files listed the address of Officer Jonas Johnson as 2902 St. Peter. Lambert's later identification of Johnson's photograph from the defective lineup was merely a verification of information already in the possession of the investigating officers.
The seizure of the evidence was the result of a complete investigation properly conducted by the affiant officers. As the questionable identification was not the primary basis of the discovery of this evidence, the evidence seized is not suppressible under the rationale of Wong Sun.
Finally, the defendant argued that the warrant was defective in that it failed to describe the place to be searched with sufficient particularity. The application for the warrant twice recites the address to be searched as 1902 St. Peter (the correct address is 2902 St. Peter). The warrant itself, however, was issued for 2902 St. Peter, and the warrant affidavit states the correct address in six places. The application, although *1285 reciting an incorrect address, accurately describes the residence to be searched as a two-story, wood frame double house. Furthermore, the surveillance described in the warrant affidavit was made of the residence at 2902 St. Peter, and the delivery of the cylinders was made to that address. Officers Johnston and Noble, the authors of the warrant affidavit which correctly stated the defendant's address as 2902 St. Peter, were also the executors of the warrant.
Both the United States and Louisiana Constitutions provide that no warrant shall be issued unless based on probable cause, supported by oath or affirmation "and particularly describing the place to be searched...". U.S.Const., Amend. IV; La. Const., Art. 1, § 5; C.Cr.P. art. 162. The object of the particularity requirement is to prevent a search of the wrong premises; to insure an individual's safety in his home from unwarranted police intrusion. Hence, "a minor error in a portion of the description of the place to be searched does not invalidate the search." State v. Korman, 379 So.2d 1061 (La.1981); State v. Smith, 397 So.2d 1326 (La.1981). "If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient." State v. Cobbs, 350 So.2d 168 (La. 1977).
The instant warrant describes the place to be searched with sufficient particularity. The motion to suppress should not have been granted on this ground.
The three defects assigned by the defendant in the motion to suppress, taken separately or together, are insufficient to merit suppression of the evidence seized. Accordingly, the ruling of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The tape itself was not made a part of the warrant affidavit.