439 So.2d 1144 (1983)
STATE of Louisiana
v.
Nathan VENTRY.
No. KA-0594.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
Writ Denied December 9, 1983.
Harry F. Connick, Dist. Atty. of Orleans Parish, William R. Campbell, Jr., Asst. Dist. Atty. of Orleans Parish, New Orleans, for plaintiff-appellee.
Roger M. Evans, New Orleans, for defendant-appellant.
Before BARRY, KLEES and WILLIAMS, JJ.
BARRY, Judge.
Defendant Nathan Ventry pleaded guilty to possession of phencyclidine and possession with intent to distribute marijuana (LSA-R.S. 40:966), but reserved the right to *1145 appeal the denial of his motion to suppress the evidence.
Ventry contends the search warrant and application specified 1918 St. Andrew Street whereas the contraband was seized in 1920 St. Andrew and argues this violates the particularity requirements of United States Constitutional Amendment IV, La. Const. Art. 1, § 5 and C.Cr.P. Art. 162.
A confidential informant told two police officers that Ventry was selling narcotics from inside 1918 St. Andrew in New Orleans. The informant stated he observed several persons approach the defendant on the sidewalk and each time the defendant went inside 1918 and into the "Manager's Office" and returned with a clear plastic bag containing marijuana. Based on this information the officers established a surveillance of the pool hall and observed five individuals approach the defendant in front of 1918 St. Andrew. On each occasion the defendant went inside the pool hall with the person and both would come out several minutes later. A black female arrived and spoke with Ventry several minutes before proceeding inside the pool hall. A few minutes later they came out and the woman was carrying a paper bag. The officers attempted to follow the woman but lost her car in traffic; however, she was located later that evening in a bar on Barrone and Clio Streets. The woman fled upon seeing the officers, but was caught going out the back door. Officer Goode observed the woman drop the paper bag which was found to contain 76 marijuana cigarettes. In response to the officers' questioning, the woman stated she obtained the marijuana at a pool hall/sweet shop on St. Andrew Street. She then directed the police to 1918 St. Andrew and described Ventry as the person who sold the marijuana to her.
Officers Marino and Goode returned to the pool hall, approached the defendant who was standing outside, and told him an informant identified him as a narcotics dealer and that a woman who had purchased narcotics from him was arrested. The officers patted down Ventry in a search for weapons and asked his consent to search his automobile and the pool hall. A search of Ventry, his automobile and the pool hall did not reveal any narcotics; however, when the officers attempted to open the lock on the door labeled "Manager's Office," the defendant objected and asked to speak with his attorney. The search was ceased and the officers returned to the police station and completed a search warrant application. The application described the building to be searched as: "concrete and wood, red in color," "commercial," "one store used as a pool hall and sweet shop," "1918 St. Andrew" and "no apartment." The resultant search of the room(s) beyond the door marked "Manager's Office" revealed a large amount of marijuana, an envelope of phencyclidine, a scale, rolling papers, a cigarette roller, two guns, a stolen bicycle and $1,040 in cash.
Defendant argues 1918 St. Andrew and the adjacent property wherein the "Manager's Office" is located are separate structures and the search should have been restricted to 1918 which housed the pool hall and sweet shop. An architectural expert described the building next to 1918 as a "very old run down apartment" and stated the two structures were built from different materials, had different facades, and roof lines.
The architect rendered a scale drawing which shows a common wall with double doors connecting the two structures. The witnesses stated that in the pool hall (1918) in the proximity of the double doors was a sign reading "Manager's Office" where the drugs were found. On cross-examination the architect conceded he assumed the address of the adjacent apartment to be 1920 St. Andrew even though there was no municipal number on that building.
Ventry testified he leased the property separately for the last three years, but offered no proof to support that claim. He alleged the buildings are separate structures; one a business and the other a two bedroom residence. Ventry conceded there was no municipal number on the "apartment side" because it was removed a year earlier to paint. On cross-examination *1146 Ventry admitted his "formal" address was 1918 St. Andrew.
A search warrant must describe with particularity the place to be searched. United States Constitutional Amendment IV; La. Const. Art. 1, § 5; La.C.Cr.P. Art. 162. Our Supreme Court stated in State v. Cobbs, 350 So.2d 168, 171 (La.1977):
The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. [citations omitted]
A discrepancy, such as a non-existent address, will not invalidate the search warrant. State v. Korman, 379 So.2d 1061 (La.1980); State v. Petta, 354 So.2d 563 (La.1978); State v. Alexander, 337 So.2d 1111 (La.1976). In each of those cases the warrants were upheld because the court felt there was little possibility the wrong premises would be searched.
However, warrants were defective in State v. Lee, 247 La. 553, 172 So.2d 678 (1965) and State v. Manzella, 392 So.2d 403 (La.1980) where incorrect addresses were specified. In Lee the executing officer realized the warrant incorrectly named 2127 Bienville instead of 2123 Bienville and telephoned the issuing judge who approved a change on the warrant. The court held the warrant invalid because it was amended without the requisite amendment to the affidavit which could only be done by a judge. The court stated:
Under no circumstances could it be held that an officer with such a warrant could take it upon himself to enter and search premises located at another number. Lee, supra, 172 So.2d at 682.
In Manzella the warrant specified 6176 Pontchartrain Blvd., the police rang the doorbell at 6176, a woman answered and told the officers Manzella, her brother, lived at 6178 in the other half of the house. The police searched 6178 and the court held the warrant invalid because it did not "particularly describe" the right premises.
In the instant case, like Lee and Manzella and unlike Korman, Petta and Alexander, the warrant contained a specific address. In State v. Smith, 397 So.2d 1326 (La.1981) the application and warrant specified 1821 Carondelet Street but the officers searched 1819 Carondelet because they knew it was the defendant's residence. The executing officers had observed suspicious activity at 1819, the affidavit identified the correct apartment door with a picture window to the right and column with 1821 to the left. The court held the warrant was sufficient because the affidavit served to "particularize" an otherwise misleading warrant.
The facts of this case are much stronger than Smith. The officers testified (and it is uncontradicted) that 1918 was the only address on the building. During their surveillance all suspected illegal activity was observed at 1918. Information from their confidential informant revealed the marijuana was kept inside 1918 behind doors marked "Manager's Office." The application clearly establishes (and was confirmed by the officers' and defendant's testimony at the hearing) that the search warrant became necessary only after Ventry allowed the police to search the pool hall, but refused entry into the "Manager's Office." This was obviously the only area where the officers sought authorization to search. The "Manager's Office" was readily accessible from the pool hall through the double doors and the officers had no reason to suspect the "Manager's Office" might be part of a separate building. Under these circumstances, we feel the officers had every reason to believe they were in 1918 when they entered the "Manager's Office." See State v. Hymer, 400 So.2d 637 (La.1981); State v. Roach, 322 So.2d 222 (La.1975). Unlike Lee and Manzella the officers did not knowingly search a municipal address not specifically designated in the warrant. Like Smith, the affiants were also the executing officers and there was no reason to believe an address *1147 not intended to be searched would be searched.
The purpose of the exclusionary rule is to deter police misconduct. Here, there was no error nor was there arbitrary action or bad faith on the part of the officers. The police went where they intended to go. There is nothing in the record to support the defendant's contention that 1920 was illegally searched nor is there any evidence to even establish the existence of 1920 St. Andrew as a municipal address, if in fact it ever was. The area searched was not due to "lucky happenstance" as in Manzella, supra, but was clearly the intended area for which the search warrant was secured. Defendant's motion to suppress the evidence is without factual or legal substance and was properly denied.
Defendant further argues that the application for the search warrant contained false information, i.e., that he consented to the search of his person, automobile and pool hall. Both officers unequivocally testified that Ventry granted permission to search. Defense witness Charlene Gilmore and Ventry testified that he "mildly" objected. The trial court said:
There is no doubt that absent the defendant's permission, the officers had no right to search Ventry's person, car and pool hall. Permission was clearly obtained by the officers and that search revealed nothing at all, but a reluctance on the part of Ventry to permit entry into the "manager's office." It was at that point that the officers used the information they had been possessed of all the while and applied for a search warrant. There is neither a "fruit of the poison tree" situation here, nor a misstatement by the officers.
Officers Marino and Goode developed the case, pursued the evidence by appropriate warrant, and conducted their search in a reasonable and prudent manner. In fact, there conduct followed textbook procedures. Consent to search is a question of fact involving credibility of the witnesses and great weight is given to the trial judge's determination. State v. Robinson, 386 So.2d 1374 (La.1980). We find no abuse of discretion.
The defendant's conviction and sentence are affirmed.
AFFIRMED.