759 So.2d 60 (2000)
STATE of Louisiana
v.
Joseph P. STERLING.
No. 99-KK-2598.
Supreme Court of Louisiana.
April 25, 2000.
*61 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jeffrey W. Davidson, New Orleans, Counsel for Applicant.
Joseph A. Rome, New Orleans, Counsel for Respondent.
Prior report: 751 So.2d 866.
PER CURIAM.[*]
We granted the state's application in this case to consider the validity of a search conducted of 3022 Wall Boulevard in New Orleans under a warrant issued for 3024 Wall Boulevard, described in the warrant as a "red brick two story structure with a white front door and trim [with] the municipal [number] 3024 ... visible from the street and ... located on the front door." It was only after the police entered the building that they discovered the premises had two municipal numbers, one for an upstairs apartment (3024 Wall), accessible through the front door and a rear upstairs door, and another number for the lower apartment (3022 Wall), accessible through a lower rear door and occupied by respondent, the target of their investigation. Given the discrepancy in the municipal numbers for the premises, the trial court granted respondent's motion to suppress the cocaine seized from his apartment on grounds that the warrant had failed to described with particularity the place to be search. See State v. Manzella, 392 So.2d 403 (La.1980) (warrant for 6176 Ponchartrain Boulevard did not authorize search of 6178 Ponchartrain, the other side of a double home). The court of appeal denied the state's application for review. State v. Sterling, 99-1217 (La.App. 4th Cir. 8/2/99) (Byrnes, J., dissenting). Despite the discrepancy in municipal numbers for the targeted premises, we reverse the judgments below because the conduct of the officers in this case appears fully "consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." Maryland v. Garrison, 480 U.S. 79, 88-89, 107 S.Ct. 1013, 1019, 94 L.Ed.2d 72 (1987).
According to the warrant application, the police received a tip from a confidential informant that "Bam" was selling cocaine from his residence at 3024 Wall Boulevard. In the surveillance which followed, the officers observed respondent, who matched the physical description of Bam provided by the confidential informant, converse briefly with a woman at the back of the two-story building in the 3000 block of Wall Boulevard and accept some currency from her. He then walked around to the front door marked with the municipal number 3024 and stepped inside. Respondent emerged shortly thereafter, met the woman at the side of the building, and handed her a small object. Approximately 15 minutes later, the officers, who had relocated to the back of the building to obtain a better vantage point, observed a different woman approach respondent and hand him some currency. Respondent entered the residence through a lower rear door. He returned shortly and handed the woman a small white object which she pocketed and left. Minutes later, a man approached respondent and spoke to him briefly. Respondent then climbed an outside staircase and entered the building through an upstairs door. When he came back down, the officers observed respondent show the man several small white objects in his hand. The suspected buyer chose one of the objects and left. Respondent then walked back up the staircase to the second floor and entered the building as the officers left to secure their warrant.
When the police executed the warrant, they used the front and rear upstairs door to enter the building. The residents on the second floor told the officers that Bam "stayed downstairs but he frequented upstairs." Two officers remained upstairs while the rest of the officers went back downstairs, where they entered respondent's apartment and handed him a copy *62 of the search warrant. The officers subsequently seized a large rock of cocaine and associated drug paraphernalia. According to Detective Favaroth, an affiant on the warrant, he first learned the correct address of respondent's apartment when, in the course of searching the premises, he found a piece of mail addressed to respondent at 3022 Wall Boulevard. The state subsequently charged respondent with possession of 28 grams or more of cocaine, but less than 200 grams, in violation of La.R.S. 40:967(F)(1)(a).
The particularity requirement in the Warrant Clause of the Fourth Amendment assures that "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search ... the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. at 84, 107 S.Ct. at 1016. Accordingly, "[a] search warrant for an apartment house or hotel or other multipleoccupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately." 2 Wayne R. LaFave, Search and Seizure, § 4.5(b), p. 526 (3d ed.1996). Nevertheless, "[j]ust as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." Garrison, 480 U.S. at 85, 107 S.Ct. at 1017. Although it may mistakenly characterize a multiple dwelling unit as a single occupancy dwelling, a warrant is not invalid when "the building in question from its outward appearance would be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reasons to know of the structure's actual multiple-occupancy character until execution of the warrant was underway...." LaFave, supra, § 4.5(b) at 529. In these circumstances, the validity of the search turns on the manner in which the officers execute the warrant "based on the information available as the search proceeds.... recogniz[ing] the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." Garrison, 480 U.S. at 87, 107 S.Ct. at 1018 (footnote omitted).
In the present case, there is no question that the warrant authorized, and was intended to permit, the search of the entire two-story building described in the application. The scope of that authority was based on the officers reasonable and good faith (albeit mistaken) belief that the structure was a single-unit dwelling, based on their observations of an individual meeting the informant's description of Bam moving in and out of the upstairs and downstairs of the building marked with a single visible municipal number, the same number used by the confidential informant in his tip. In fact, the officers had probable cause to search the entire building even after discovering that it was a duplex. The critical element in a reasonable search "is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific `things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976-77, 56 L.Ed.2d 525 (1978). Respondent's movements upstairs and downstairs as he conducted his apparent drug transactions indicated that he had access to the entire structure and that, at least for purposes of determining the extent of Bam's drug operation, there was "no real division in fact or in use of the building into separate halves." Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). See also United States v. Butler, 71 F.3d 243, 249-50 (7th Cir.1995)(when police had reasonable belief that the large-scale *63 drug operation conducted by the defendant from his second floor apartment encompassed all three floors of a triplex, search warrant lawfully authorized search of the entire building); United States v. Johnson, 26 F.3d 669, 694-96 (7th Cir. 1994) (when police had good faith belief duplex was being used as a single unit, drug deals occurring on second floor supported probable cause to search the entire premises).
Nevertheless, although they had a valid warrant and probable cause to search the entire building, the officers immediately refocused their investigation upon learning from the upstairs residents that Bam lived downstairs. The officers then searched only respondent's downstairs apartment. By carefully limiting their search according to its initial justification and preserving the privacy interests of the other tenants in the building, the officers executed the warrant in a manner that fully accorded with the Fourth Amendment's particularity requirement.
The district court therefore erred in granting respondent's motion to suppress. The judgment is vacated and this case is remanded to the district court for further proceedings not inconsistent with the views expressed herein.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
A search warrant must describe with particularity the place to be searched. U.S. CONST. AMEND. IV; LA CONST. ART. 1, § 5; LSA-C.Cr.P. art. 162. The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. State v. Diggs, 98-0964 (La.App. 4 Cir. 6/24/98), 715 So.2d 692; State v. Manzella, 392 So.2d 403 (La.1980); State v. Segers, 355 So.2d 238 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977).
In Manzella, police officers obtained a search warrant for "6176 Pontchartrain Boulevard." The defendant's address was "6178 Pontchartrain Boulevard." The defendant's apartment was located in the other part of the house and was joined with 6176 Pontchartrain Boulevard by a common patio. This court held that the search warrant did not describe the place to be searched with sufficient particularity, and upheld the suppression of the evidence found in the search of the defendant's apartment. The court stated, "[t]he description employed in the warrant would not have prevented the search of the wrong premises; rather the description would have facilitated the search of the wrong premises." Id. at 406.
In this case, the description contained in the warrant clearly facilitated the search of the wrong premises. The officers obtained a warrant to search "3024 Wall Street." The defendant's address was "3022 Wall Street." Therefore, the apartment searched by the officers was not the apartment which was "particularly described" in the warrant.
Furthermore, when police officers went to 3024 Wall Street to execute the warrant, they were informed by the resident of that apartment that the defendant "stayed downstairs." At the hearing on the motion to suppress, one of the executing officers admitted that in order to get to the downstairs apartment, they had to exit 3024 Wall Street, go back down the stairs, and enter the defendant's apartment from a separate outside door because the building did not contain an interior stairwell that connected the two apartments. At that point, it is clear that the officers had sufficient information to conclude that the building contained two separate residences and that the defendant's residence was separate from the upstairs apartment. Consequently, they had enough information *64 to surmise that the residence they searched, the defendant's residence, was not the residence which was particularly described in the warrant.
Accordingly, I would affirm the trial court's decision to grant the defendant's motion to suppress the evidence obtained in the search. For all of the above reasons, I respectfully dissent.
NOTES
[*] Lemmon, J., not on panel. See La. S.Ct. Rule IV, Part II, § 3.