STOKER, Judge.
Defendant, Lowell “Sonny” Connella, pleaded guilty to a charge of receiving stolen things having a value of more than $100 but less than $500, a violation of LSA-R.S. 14:69, expressly reserving his right to appeal the trial court’s rulings on his pretrial motions to suppress illegally seized evidence and to quash the indictment. See State v. Crosby, 338 So.2d 584 (La.1976). He was given a suspended sentence of two years in the custody of the Department of Corrections and placed on supervised probation for two years. He was fined $1,000 and ordered to make restitution to the victim as a condition of his probation. For reasons set out below, we affirm the trial court rulings on both pretrial motions.
FACTS
The burglary from which this charge arose was reported on June 17, 1980, at *649 11:40 a.m. Mrs. Opal Giles reported that furniture and other property had been stolen from a house she was just moving into.
After investigating, a Rapides Sheriff’s Department deputy obtained an arrest warrant for Lloyd Lachney, Connella’s roommate at that time.[1] After further investigation, the deputy obtained a search warrant for a mini-warehouse rented the morning of the burglary by Connella. Upon searching the warehouse, most of the property reported stolen by Mrs. Giles was found.
Connella was initially charged by bill of information with simple burglary; however, that charge was dismissed upon the district attorney’s motion to dismiss the prosecution pursuant to LSA-C.Cr.P. art. 691. He was later charged in a new bill of information with receiving stolen things having a value in excess of $500.
After his pretrial motions were denied, Connella entered a plea of guilty to a charge of receiving stolen things having a value of more than $100 but less than $500. This appeal followed. The facts will be more fully dealt with below as they relate to the assignments of error.
MOTION TO SUPPRESS
The evidence sought to be suppressed is the property taken from the warehouse rented by Connella pursuant to the search warrant. Connella claims that the affidavit supporting the search warrant fails to set forth within its four corners sufficient probable cause to believe that the stolen items were contained in the warehouse.
Deputy William Hilton investigated the burglary and was the affiant for the affidavit supporting the warrant. The affidavit contains all details of his investigation which led to his seeking the warrant. A summary of facts contained in the affidavit is as follows.
Mrs. Giles reported the burglary at 23 Glen Parkway, Cotile Lake, at 11:40 a.m. on June 17, 1980. At 9:15 a.m. that same morning Deputy Hilton had observed an orange U-Haul truck parked in front of the house at 23 Glen Parkway. Upon investigating Mrs. Giles’ complaint, Deputy Hilton discovered orange paint on a freshly damaged portion of the roof and green face board of the house. He also noticed dual tire marks in approximately the same place he had seen the truck.
At 3:00 p.m. that same afternoon, Deputy Hilton located a truck at a U-Haul office similar to the one he had seen that morning with damage corresponding to the damage to the house. Orange paint found on the house matched that from the truck and green paint found on the truck matched that from the house. The truck had been rented on June 16, 1980, at 6:30 p.m. by Lloyd Lachney. The U-Haul manager said that Connella picked up Lachney when the truck was returned on June 17, 1980.
After learning that Connella and Lach-ney shared an apartment, Deputy Hilton found out from the manager of the apartment complex in which they lived that a U-Haul truck had been parked in front of their unit the entire night of June 16, 1980. The deputy spoke with Connella on June 17, asking him to have Lachney contact him. Having heard nothing from Lachney by the next day, Deputy Hilton obtained a warrant for his arrest. The arrest was made at Connella’s fire-damaged home where Lach-ney was working with Connella.
Apparently acting on his knowledge that stolen goods are often stored in warehouses, Deputy Hilton began contacting local self-storage warehouse businesses. He found that a unit in Alexandria had been rented by Connella on June 17, 1980, around 8:30 or 9:00 a.m. His request of Connella to search the warehouse was refused.
Based on the above summarized facts given in the affidavit, a search warrant for the warehouse rented by Connella was issued. Substantially all of the property reported *650 stolen by Mrs. Giles was recovered from within.
The initial charge of simple burglary and the charge of receiving stolen things for which Connella was ultimately convicted arose out of the same incident and are based on the same evidence. Three trial judges have previously upheld the validity of the affidavit, Judge Mansour who issued the warrant, Judge Humphries who denied Connella’s motion to suppress filed while he was still under the bill charging simple burglary, and Judge Teekell who denied the motion to suppress under consideration here.
LSA-C.Cr.P. art. 162 provides in pertinent part:
“A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.”
It is well settled that “The facts establishing probable cause for a search warrant must be contained within the four corners of the affidavit.” State v. Feeback, 411 So.2d 10 (La.1982), State v. Poree, 406 So.2d 546 (La.1981). In order to show probable cause, the affidavit for the search warrant must state facts and circumstances within the affiant’s knowledge which are based on reasonably trustworthy information sufficient to support a reasonable belief that an offense has been committed and that evidence or the contraband may be found at the place searched. State v. Po-ree, supra.
Appellant in this case claims the affidavit fails to establish probable cause to believe that Connella was connected with the burglary or that the proceeds from the burglary would be found in the warehouse rented by him. We disagree. When considered alone, each of the facts v/hich link Connella to the crime is as consistent with innocence as with guilt. However, when considered in conjunction with each other, they are sufficient to support a reasonable belief that a burglary had occurred and that the stolen property would be found in the warehouse rented by Connella.
Affidavits in support of search warrants should be interpreted in a common sense and realistic fashion. State v. Johnson, 408 So.2d 1280 (La.1982). Connella’s renting of the warehouse on the day of the burglary just shortly before the U-Haul truck was observed at the house is sufficient, when considered along with other facts in the affidavit, to establish probable cause to believe that the stolen property would be located in the warehouse. The trial court properly denied the motion to suppress.
MOTION TO QUASH
Connella claims that prosecutorial misconduct deprived him of his right to a speedy trial and that his motion to quash the indictment on this ground should have been granted.
The procedural history of this matter leading up to the present appeal is somewhat complicated. On October 27,1980, the state filed a bill of information charging Connella with simple burglary in relation to the June 17 event. Connella pleaded not guilty and trial was first set for February 9, 1981. On that date and subsequently on new trial dates of June 15, 1981 and January 18, 1982, the case was continued due to the illness and scheduling conflicts of defense counsel. On February 11,1982, a new trial date of May 10, 1982 was set.
At a pretrial conference for Lachney on May 19, 1981, Judge Lee indicated that he did not want to hear any pretrial motions or a bench trial on the Connella case due to his friendship with the Connella family. As a result of this statement, the assistant district attorney, Greg Fowler, noted in his records that Judge Lee did not want to hear the Connella case.
Both parties were present and ready for a jury trial on May 10, 1982, before Judge Jackson who was scheduled to hear criminal cases. At this time, however, Judge Jackson recused himself because he knew the victim and had prior knowledge of the crime. According to regular procedures, the case then would be transferred to Judge *651 Lee who was sitting as the other judge assigned to hear criminal cases during that time.
Apparently believing that Judge Lee would decline to hear the case, Mr. Fowler dismissed his witnesses after Judge Jackson’s recusal. On that same day, witnesses overheard the district attorney, Edwin 0. Ware, remark that the state could not get a fair trial before Judge Lee if the accused was white. Mr. Fowler testified that he did not overhear this remark. Other witnesses testified that he was present when the remark was made.
The next day, May 11, the matter came up before Judge Lee. Mr. Fowler explained that because of Judge Lee’s expression of preference at Lachney’s pretrial conference in 1981, he had not contemplated calling the case before him. At this point Judge Lee explained that his reservations concerning acting with reference to this prosecution were limited to deciding pretrial matters or presiding over a bench trial and that he had no hesitation about presiding over a jury trial. Having had the matter explained, Mr. Fowler moved for a continuance because his witnesses, some of whom were from out of state, had been released the day before. Alternatively, he sought to recuse Judge Lee.
Judge Lee denied the continuance and assigned the motion to recuse to Judge Mansour for hearing. Accepting Judge Lee’s testimony that he could fairly preside over a jury trial, Judge Mansour denied the motion to recuse. At the parties’ request, Judge Mansour also ruled on the motion for continuance, denying it as Judge Lee did.
The court recessed with the Connella case scheduled to come to trial after lunch. However, Mr. Fowler filed a motion to dismiss the prosecution pursuant to LSA-C. Cr.P. art. 691 before the case was called. Although defense counsel objected strenuously, Judge Lee had no alternative but to accept the dismissal.
On June 29, 1982, a new bill of information was filed charging Connella with receiving stolen things. This charge admittedly arose out of the same facts as the prior burglary charge. Connella filed a motion to quash the new bill claiming that due to prosecutorial misconduct his right to a speedy trial had been denied. The alleged prosecutorial misconduct complained of is that the state’s action in dismissing and rebilling Connella amounts to judge-shopping.
The matter came before Judge Teekell who denied the motion to quash finding that “Mr. Greg Fowler has acted in good faith, and has acted diligently in representing the State’s interests regarding the prosecution in this particular case.” We agree with this finding. Mr. Fowler dismissed his witnesses after Judge Jackson’s recusal, acting under a mistaken belief that Judge Lee would not hear the case in any posture and knowing that these were the only two judges hearing criminal cases at that time. When faced with the prospect of going to trial the next day without his witnesses, Mr. Fowler did the only thing he knew to do at that point to protect the state’s interests. There is no evidence that Mr. Fowler’s decision was influenced by Mr. Ware’s gratuitous remarks concerning Judge Lee.
The actual delay in this case as a result of prosecutorial actions was from May 10,1982 until October 11, 1982, when Connella entered his guilty plea. This is not a substantial amount of time for a case which has been delayed for almost two years at defendant’s request.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court addressed the speedy trial issue and discussed four factors to be considered in determining whether a defendant has been deprived of his right to a speedy trial. These factors are the length of the delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.
As stated before, we do not find the length of the delay in this case to be significant. Although more than two years passed between the time Connella was arrested and the time he was ultimately brought to trial, only five months of that *652 time is attributable to the prosecution. The reason for that five-month delay has been fully discussed above. Under the circumstances, the prosecution acted in good faith in delaying the trial and protecting the state’s interests.
There is no doubt that Connella timely asserted his right to a speedy trial. This was first done on May 11, 1982, just after the case was dismissed by the prosecution. Since we find that there was no violation of Connella’s right to a speedy trial, the assertion of the right becomes unimportant.
Defense counsel strongly urges on appeal that because the delay was attributable to prosecutorial misconduct, there is no requirement that prejudice to the defendant be shown. We hold that there was no pros-ecutorial misconduct, rather an unfortunate misunderstanding occurred. Connella has made no showing that he suffered prejudice as a result of the five-month delay caused by the prosecution and is not entitled to relief.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED.

. Lachney also appealed his conviction. His claims are dealt with by another panel of this court in a separate opinion captioned State v. Lachney, 436 So.2d 645 (La.App. 3rd Cir. 1983).