T.C. Memo. 2011-73

UNITED STATES TAX COURT

MONA LISA HERRINGTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12204-04.               Filed March 30, 2011.

<u>R. Cody Mayo, Jr.</u>, for petitioner.

<u>Marshall R. Jones</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined the following

deficiencies, penalties, and additions to tax with respect to

petitioner's 1997 and 1998 Federal income taxes:[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
(continued...)

Penalties and Additions to Tax

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(f) | Sec. 6662(a) | Sec. 6663 |
|------|-----------|-----------------|--------------|--------------|-----------|
| 1997 | $46,587 | $11,647 | --- | --- | $34,940 |
| 1998 | 62,094 | --- | [1]$46,571 | $12,419 | --- |

[1]The notice of deficiency states that if it is determined that the sec. 6651(f) addition to tax is inapplicable, the sec. 6651(a) addition to tax is applicable.

After concessions by both parties, the issues to be decided are:  (1) Whether petitioner is entitled to deduct as compensation or theft losses certain amounts that her abusive boyfriend took from her business while working there during 1997 and 1998; (2) whether for 1997 petitioner is liable for the civil fraud penalty under section 6663; and (3) whether for 1998 petitioner is liable for an addition to tax under section 6651(f) for fraudulent failure to file.[2]

---

[1](...continued)
Procedure.  All amounts are rounded to the nearest dollar.

[2]Petitioner concedes that if she is not liable for the sec. 6651(f) addition to tax and sec. 6663 fraud penalty, she is liable for the sec. 6651(a)(1) addition to tax for 1997 and the sec. 6662(a) penalty for 1998 to the extent that they apply computationally.  Although, as indicated above, respondent determined in the notice of deficiency that for 1998 the sec. 6651(a) addition to tax should apply if the sec. 6651(f) addition to tax is inapplicable, on brief respondent has not advanced this alternative position, and we deem him to have abandoned or waived it.

## FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate by this reference. When she petitioned the Court, petitioner resided in Louisiana.

In 1991 petitioner was working two jobs to support herself and her two young children. One job was as the owner of an H&R Block franchise; the other was in a prison detention center. She had recently divorced, her father had recently died, and her mother had moved into her house to help take care of the children. About this time petitioner became involved with a man working at her H&R Block office, and he moved in with her. She later learned that he had an extensive criminal record and a violent temper.

Petitioner's relationship with the boyfriend was marked by intimidation and physical abuse. When she failed to do his bidding or attempted to leave him, he reacted violently. He once threw her from a moving car. Another time when she threatened to leave him, he placed a gun against her forehead and cocked the hammer. On another occasion, in midwinter, he hit her in the head with a beer bottle and threw her from a boat into a lake. On another occasion, she testified credibly, he "gave me a picture of my daughter with her face shot out, and told me that's what would happen to her if I tried to leave."

At some point after becoming involved with petitioner, the boyfriend obtained a video poker license and opened an establishment in Monroe, Louisiana. After only a few months, he lost his license for misdeeds that included selling liquor to a minor. The boyfriend convinced petitioner to open her own video poker business.

In 1996 petitioner acquired two video poker licenses in her own name. Because, according to petitioner's testimony, the licenses were required "to be run separately", she opened two sandwich shops next door to each other in Farmerville, Louisiana, each with a video poker machine. Petitioner worked in the shops making sandwiches and dealing with the public. The boyfriend took charge of the finances and the books and had check-signing authority on the business bank accounts. Virtually all the shops' income resulted from video poker revenue.

Petitioner and the boyfriend had no agreement regarding his compensation. Rather, as petitioner testified, he "set his own compensation". He did this by writing checks to himself or to cash, signing either his name or petitioner's name. In this manner he withdrew from petitioner's business accounts $114,000 during 1997 and $96,000 during 1998. He used these funds to pay his personal expenses, including his child support obligations.

Petitioner knew that the boyfriend was writing checks and taking money out of her business accounts. But she did not know

beforehand when he might write checks or for how much. Consequently, she was left in constant uncertainty about the balances in her business checking accounts. To avoid overdraft fees, she worked out an arrangement with a friend who worked at her local bank and who knew of petitioner's troubles with the boyfriend. Each morning petitioner would call her friend at the bank to determine how many of her checks were set to clear the accounts that day. As long as petitioner made a cash deposit to cover the checks by noon of any given business day, the bank would honor the checks and not charge overdraft fees.

The shops operated until 1999, when the parish outlawed video poker. By that time, petitioner had moved with her family to Shreveport. The boyfriend initially followed her there but eventually moved on.

As a condition for maintaining her video poker licenses, petitioner had been required annually to submit copies of her Federal income tax returns to the Louisiana State Police. The boyfriend had prepared petitioner's 1997 Federal income tax return, and petitioner had signed it. According to petitioner's testimony, the boyfriend told her that he would file the return, but he never did. Shortly before her shops ceased operations, petitioner attached a copy of the return to her State video poker application and signed a release allowing the police to verify that the return had been filed with the Internal Revenue Service

(IRS).  It then came to light that petitioner's 1997 and 1998 returns had never been filed.[3]

Resulting inquiries led, in the summer of 1999, to an IRS criminal investigation.  In 2004 petitioner pleaded guilty to willful failure to file tax returns under section 7203 for tax years 1997 and 1998.

During the course of the criminal investigation the boyfriend, who was also under criminal investigation, contacted petitioner and told her that he needed to file his own tax returns and needed a statement from her regarding the amount of money he had received from her business.  After reviewing the books, they agreed that the boyfriend had received from her business $114,000 in 1997 and $96,000 in 1998.  At the boyfriend's urging, they signed affidavits stating that during each of the years 1997 and 1998 the boyfriend "took cash and paid personal expenses from the two businesses" in the amounts previously agreed upon and that these takings represented "his total compensation as a consultant to the businesses".

On April 14, 2000, petitioner filed her 1997 Federal income tax return, reporting income from her two shops, as sole proprietorships, on two Schedules C, Profit or Loss From

------

[3]The record does not reveal the circumstances of petitioner's failure to file her 1998 return.

Business.  She reported total Schedule C expenses of $263,590.[4]
On April 9, 2001, petitioner filed her 1998 Federal income tax
return, claiming total Schedule C expenses for the two shops of
$197,157.[5]

In the notice of deficiency respondent disallowed $133,284
of petitioner's Schedule C expenses for 1997 and $174,701 for
1998, for the stated reason that it had not been established that
these amounts constituted ordinary and necessary business
expenses or were expended for the purpose designated.[6]

OPINION

I.  Deductibility of the Withdrawals

There is no dispute about any item of petitioner's income or
deductions other than the deductions that petitioner claims with
respect to the amounts the boyfriend received, stipulated to have

---

[4]Petitioner's 1997 Federal income tax return showed net
Schedule C income of $51,848 and total tax liability of $13,270.
On the same day she filed her 1997 return, she also submitted an
amended 1997 Federal income tax return, showing a greater amount
of net Schedule C income than that reported on her original
return but a smaller total tax liability.  Respondent did not
process the amended 1997 return, and the notice of deficiency is
based on the original 1997 return.

[5]Petitioner's 1998 return showed Schedule C net income of
$35,634 and total tax liability of $7,356.

[6]The notice of deficiency does not itemize exactly which
Schedule C expenses are disallowed other than by a line-item
reference to "Sched C - Other expenses".  The Court is unable to
correlate the amount of the "Other expenses" disallowed in the
notice of deficiency with specific expenses that petitioner
claimed on her Schedules C.

been $114,000 for 1997 and $96,000 for 1998.[7]  Petitioner

contends that these amounts are deductible as compensation for

personal services rendered.  Petitioner further contends that any

amounts not deductible as compensation are deductible as thefts

or conversions by the boyfriend.[8]  For the reasons discussed

below, we conclude that none of the amounts at issue are properly

deductible as reasonable compensation under section 162 but that

all these amounts are deductible as theft losses under section

165.

Section 162(a) allows as a deduction ordinary and necessary

expenses paid or incurred during the taxable year in carrying on

any trade or business, including "a reasonable allowance for

salaries or other compensation for personal services actually

rendered".  The test of deductibility for compensation payments

is "whether they are reasonable and are in fact payments purely

for services."  Sec. 1.162-7(a), Income Tax Regs.  In Paula

---

[7]The parties have stipulated that if the payments to the boyfriend are held to be fully deductible, petitioner "is due negative adjustments to income (as computed by reference to the Notice) for 1997 and 1998 of $26,030.35 and $12,058.00, respectively."  The record is inadequate for the Court to replicate these calculations.

[8]Pursuant to Rule 142(a) and sec. 7491(a), petitioner has the burden of proof on these issues unless she introduces credible evidence so as to shift the burden to respondent. Because our conclusions are based on a preponderance of the evidence, the allocation of the burden of proof is immaterial with respect to these issues.  See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

Constr. Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973), this Court stated: "It is now settled law that only if payment is made with the intent to compensate is it deductible as compensation. Whether such intent has been demonstrated is a factual question to be decided on the basis of the particular facts and circumstances of the case." (Citations omitted.)

A preponderance of the evidence convinces us that the amounts that the boyfriend took from petitioner's business accounts were not paid with the requisite intent by petitioner to compensate him. To the contrary, the facts indicate that petitioner was not even aware beforehand when the boyfriend might decide to write himself a check or for how much. To avoid overdraft fees, she had to communicate with her bank each day to see whether she needed to cover whatever amounts the boyfriend, without her knowledge, might have withdrawn from the business accounts. Given the nature of the relationship between petitioner and the boyfriend, which even respondent characterizes as "incredibly abusive", we are not convinced that this arrangement signified anything more than the boyfriend's domination and control over her. We believe the situation is summed up by petitioner's testimony that the boyfriend "set his own compensation". For similar reasons, we attach little significance to the fact that during the criminal investigation

petitioner signed affidavits, at the boyfriend's urging, indicating that the amounts he had taken represented compensation. And although the boyfriend apparently performed some services for petitioner's businesses, the record does not suggest any correlation between the services he rendered and the amounts he took. We conclude that the amounts the boyfriend took are not properly deductible as reasonable compensation.

An individual may deduct losses, including theft losses, incurred in a trade or business. Sec. 165(a), (c); see Marian v. Commissioner, T.C. Memo. 1985-554; Clemons v. Commissioner, T.C. Memo. 1979-273. A theft loss is "sustained during the taxable year in which the taxpayer discovers such loss." Sec. 165(e). If in the year of discovery, however, there exists a claim for reimbursement, no loss shall be considered sustained until the taxable year in which it can be ascertained with reasonable certainty that no reimbursement will be received. Sec. 1.165-1(d)(3), Income Tax Regs.

"[T]heft" is "a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile." Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956); see also sec. 1.165-8(d), Income Tax Regs. Generally, whether a theft loss has been sustained depends upon the law of

the State where the loss was sustained.  Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973); Luman v. Commissioner, 79 T.C. 846, 860 (1982); Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975).  Although a criminal conviction in a State court may conclusively establish the existence of a theft, the deduction does not depend upon whether the perpetrator is convicted or prosecuted or even whether the taxpayer chooses to move against the perpetrator.  Weingarten v. Commissioner, 38 T.C. 75, 78 (1962); Vietzke v. Commissioner, 37 T.C. 504, 510 (1961).  The taxpayer need prove only by a preponderance of the evidence that a theft occurred under the relevant State statute.  Allen v. Commissioner, 16 T.C. 163, 166 (1951).

Petitioner's loss occurred in the State of Louisiana. Louisiana law provides:

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations.  An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.  [La. Rev. Stat. Ann. sec. 14:67 (2007).]

A preponderance of the evidence convinces us that the boyfriend's taking of funds from petitioner's business accounts for his personal purposes constituted theft within the meaning of Louisiana law.  The evidence does not suggest, and respondent

does not contend, that petitioner consented before the fact to the boyfriend's writing checks from petitioner's business accounts to pay his personal expenses. To the contrary, as previously discussed, the evidence shows that petitioner would often find out about these checks only after the fact by making inquiries at the bank. We infer that petitioner proceeded in this manner to avoid physical confrontation with the boyfriend.

On brief, respondent contends that the boyfriend's takings should not be viewed as thefts or conversions because petitioner "never objected to the transfers and there is no evidence that she reported any theft to the appropriate authorities". Under Louisiana law, however: "In order to consent to the theft of his property, an owner must do more than passively assent to the taking." State v. Johnson, 408 So. 2d 1280, 1283 (La. 1982). We do not believe that petitioner ever gave more than passive assent to the boyfriend's taking her business funds. But even if petitioner might be thought in some general way to have consented to the boyfriend's compensating himself with her business funds, we do not believe that it was effective consent, but rather that it was induced by force and threats by the boyfriend, who had on more than one occasion threatened to kill petitioner and her children. For similar reasons, we assign little significance to the fact that she did not report the thefts to the authorities.

Respondent contends that because petitioner and the boyfriend lived together at times, she personally benefited from the withdrawals, such that they should be considered her nondeductible living expenses pursuant to section 262. We are not convinced by respondent's argument, which is inconsistent with our finding, based upon petitioner's unopposed proposed finding of fact, that the boyfriend used the funds taken from petitioner's business to pay his personal expenses.

On a preponderance of the evidence we find (and respondent does not contend otherwise) that petitioner had no prospect of being reimbursed for any amounts the boyfriend took and that she sustained the losses in the years for which she has claimed the deductions. There is no dispute as to the amounts. On the basis of all the evidence, we hold and conclude that petitioner is entitled to deduct as theft losses incurred in a trade or business the $114,000 that the boyfriend took in 1997 and the $96,000 that he took in 1998.

## II. Section 6663(a) Fraud Penalty

Section 6663(a) imposes a penalty on the taxpayer if any part of a tax underpayment is due to fraud. The burden of proof is upon the Commissioner to show by clear and convincing evidence that the fraud penalty applies. Sec. 7454(a); Rule 142(b). To satisfy his burden of proof, the Commissioner must establish both that an underpayment exists for each year and that some part of

the underpayment is due to fraud.  See DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Respondent's determination of the section 6663(a) penalty for 1997 is predicated upon his determination that part of petitioner's underpayment is attributable to her claiming improper deductions for the funds taken by the boyfriend and that this part of the underpayment is due to fraud.  Because we have held that petitioner is entitled to deduct these amounts as a theft loss, respondent has failed to show that any part of the underpayment is due to fraud.  Consequently, we do not sustain the section 6663(a) fraud penalty.

III. Section 6651(f) Addition to Tax

Respondent determined that petitioner is liable for the section 6651(f) addition to tax for fraudulently failing to timely file her 1998 tax return.  Respondent must establish by clear and convincing evidence that petitioner's failure to timely file was an intentional attempt to evade tax believed to be owing.  See sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 653 (1994); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).

Although petitioner's guilty plea under section 7203 conclusively establishes petitioner's willfulness in failing to file her 1998 return, it does not conclusively establish

fraudulent intent under section 6651(f).  See <u>Grosshandler v.</u>
<u>Commissioner</u>, 75 T.C. 1, 19 (1980); <u>Wilkinson v. Commissioner</u>,
T.C. Memo. 1997-410.  Petitioner's ownership of an H&R Block
franchise also suggests that she knew or should have known of the
filing requirement.  Although these are significant badges of
fraud, we are not convinced that even taken together they
conclusively establish her fraudulent intent, particularly taking
into account her physical abuse and the abusive boyfriend's
intrusion into her business and tax matters.  Respondent
presented no witnesses and introduced no clear and convincing
evidence to establish that petitioner's failure to timely file
her 1998 tax return was fraudulent.  We do not sustain the
section 6651(f) addition to tax.

To reflect the foregoing and the parties' stipulations,

<u>Decision will be entered</u>
<u>under Rule 155</u>.