T.C. Memo. 2013-255

UNITED STATES TAX COURT

ABDALLA MOHAMED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24302-10.                    Filed November 12, 2013.

P, a fugitive from justice, underpaid his 2006 and 2007 Federal income tax.  R determined for each year an I.R.C. sec. 6663(a) fraud penalty.  P's business partner, not P, signed the 2007 return prepared for P.  R received the 2007 return and processed it as P's.

Held:  Because the business partner was not properly authorized to sign the 2007 return, it is not a valid return for purposes of I.R.C. sec. 6663(a).  <u>See</u> I.R.C. sec. 6664(b).

Held, further, the Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, signed by P's agent, is not a return.

Held, further, because R has failed to prove that P deliberately filed his 2007 return after the due date, we will not sustain a delinquency addition to tax under I.R.C. sec. 6651(f) for fraudulent failure to file a return.

[*2]        Held, further, P is liable for an I.R.C. sec. 6663(a) fraud penalty
           for 2006.


Peter S. Heller, for petitioner.

Derek P. Richman and William Lee Blagg, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notice of deficiency (notice), respondent determined that, because petitioner underpaid his Federal income tax for 2006 and 2007, he is liable for civil fraud penalties of $256,142 and $231,762 for those years, respectively.  Petitioner concedes deficiencies in his 2006 and 2007 Federal income tax.  Those deficiencies have been assessed.  The issues for decision are whether petitioner is liable for the civil fraud penalties respondent determined or, for 2007 only, if not, whether he is liable for a delinquency addition to tax for fraudulent failure to file a return.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

- 3 -

FINDINGS OF FACT

Petitioner is a fugitive from justice, living abroad, perhaps in Khartoum, Sudan. Petitioner's counsel executed the petition. Before fleeing the country in 2008, petitioner resided and did business in Miami, Florida. Petitioner himself did not appear for any of the proceedings.

During 2006 and 2007, petitioner was the 100% owner of six corporations and at least a 50% owner of a seventh corporation, all of which were, within the meaning of section 1361(a), S corporations (collectively, petitioner's corporations). Petitioner's corporations were engaged in the wholesale and retail sale of beauty supplies to salons and individuals. Each business had a location manager, and all were overseen by a general manager, Jadelmoula Abidine, who worked from a central office. Mr. Abidine maintained meticulous records of the corporations' daily finances, which he regularly reported to petitioner. Although petitioner was rarely at the individual stores, he monitored the businesses' activities remotely through surveillance systems installed at each location.

Petitioner employed Nicano Mantecon to prepare his corporations' State sales tax returns and his personal Federal income tax returns for the years at issue. Generally, petitioner provided the corporations' monthly sales figures to Mr. Mantecon. He omitted from the figures that he reported a substantial portion

**[*4]** of the corporations' cash transactions.  In preparing the returns, Mr. Mantecon relied exclusively on the figures petitioner, or one of his associates, reported to him.  He did not personally review any corporate records or accounting ledgers, nor did he otherwise verify the accuracy of the information he was given.  As a consequence of the unreported cash transactions, the returns Mr. Mantecon prepared significantly understated the corporations' State sales tax liabilities and petitioner's Federal income tax liabilities.

Mr. Mantecon prepared petitioner's 2006 Form 1040, U.S. Individual Income Tax Return (2006 return).  The 2006 return shows taxable income of $847,636 and a total tax liability of $276,533.  Petitioner signed and timely filed the 2006 return.

Mr. Mantecon also prepared a 2007 Form 1040 for petitioner (2007 return).  The 2007 return shows taxable income of $1,025,234 and a total tax liability of $337,906.  Petitioner did not sign the 2007 return.  Rather, petitioner's longtime business partner Muttissim Hagnour signed it, using his own name.  Mr. Hagnour routinely represented petitioner when he was unavailable.  The Internal Revenue Service (IRS) received the 2007 return on or before April 15, 2008, and processed it as petitioner's 2007 Federal income tax return.  Petitioner did not submit to the IRS any document granting Mr. Hagnour (or anyone else) the authority to file the

**[\*5]** 2007 return on his behalf. No other return was filed in petitioner's name for that year.

At some point in 2007, Edward Tetterton, then manager of the criminal investigation department of the Florida Department of Revenue, received information that petitioner's corporations were involved in sales tax fraud, and he began an investigation. In January 2008, State officials executed search warrants against all seven of petitioner's corporations. Among the items seized were sales records, cash register tapes, inventories of expenses, and ledgers.

The seized records revealed that petitioner's corporations had been underreporting their cash transactions to the Florida Department of Revenue since at least 2003. The ledgers, which were maintained by Mr. Abidine but also contained markings in petitioner's handwriting, provided a meticulous daily record of every dollar that went into or out of each store. Mr. Tetterton compared the figures in the ledgers with the corporations' State sales tax returns and discovered numbers for the sales accounted for by the corporations' records that were "vastly different" from those reported on the corporations' returns. The records also revealed that more than $1.5 million in cash had been turned over to known money launderers for delivery to petitioner outside the country.

**[*6]** On the basis of the information revealed in these records, arrest warrants were issued against petitioner and other individuals associated with the corporations. Nine individuals were arrested, including Mr. Mantecon, Mr. Hagnour, and the store managers. For reasons not apparent from the record, petitioner avoided arrest and has lived outside the United States for the last four years. He is subject to outstanding arrest warrants for numerous criminal offenses, including theft of sales tax, the filing of false and fraudulent State tax returns, racketeering, and money laundering.

Arthur Brake, an IRS revenue agent, became aware of petitioner through an information-sharing agreement between the IRS and the Florida Department of Revenue. Mr. Brake was provided access to the ledgers and other evidence seized during the raids on petitioner's corporations. Mr. Brake compared the seized records with the IRS' records and, on the basis of his review, determined that petitioner had underpaid his Federal income tax for 2006 and 2007.

Mr. Brake made several attempts to contact petitioner by letter in order to schedule a meeting to discuss petitioner's tax liabilities, but he received no reply from petitioner (presumably because petitioner was out of the country). In May 2009 petitioner executed a Form 2848, Power of Attorney and Declaration of

[*7] Representative, appointing Steven B. Dolchin as his attorney in fact, with authority to act for him with respect to the years at issue.

On the basis of the corporations' underreporting of their income and the disallowance of certain itemized deductions petitioner claimed, respondent determined that petitioner had underreported his income by $975,780 and $882,903 for 2006 and 2007, respectively, and, consequently, that petitioner had deficiencies of $341,523 and $309,016 for those years. Respondent also determined that petitioner was liable for fraud penalties. Mr. Dolchin, acting for petitioner, agreed to the assessment of those deficiencies and executed a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment. Petitioner did not agree to respondent's determination of fraud penalties.

Respondent subsequently issued the notice, determining petitioner liable for the fraud penalty for both 2006 and 2007.

OPINION

I.    Introduction

Petitioner resides abroad. He is a fugitive from justice on account of his alleged commission of State law crimes in connection with his corporations' understating, and failing to pay, State sales tax. He concedes that, for 2006 and

**[*8]** 2007, he underreported his income by not including in gross income all of his passthrough income from those corporations. We are left to determine whether for those years petitioner fraudulently underpaid his income tax and is liable for the section 6663(a) fraud penalty or, alternatively, for 2007, whether he is liable for a delinquency addition to tax under section 6651(a) and (f) for fraudulent failure to file a return.[1]

II.    2007

A.    Introduction

Section 6663(a) imposes a penalty for fraud. It provides: "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."

Section 6664 contains certain definitions and special rules applicable to the fraud penalty. In pertinent part, section 6664(b) provides that the fraud penalty "shall apply only in cases where a return of tax is filed".

---

[1]Respondent has not invoked the so-called fugitive disentitlement doctrine in order to deny petitioner his day in court. See, e.g., Edelman v. Commissioner, 103 T.C. 705 (1994).

**[\*9]**   Petitioner did not sign the 2007 return.  We must determine whether petitioner's failure to sign the 2007 return means that he did not file a 2007 return.  If he did not, then he is not liable for the fraud penalty, and, as stated, we must determine whether he is liable for a section 6651(a) and (f) delinquency addition to tax for fraudulently failing to file a 2007 return.

      B.      <u>2007 Return Not a Valid Return</u>

Section 6011(a) provides that "any person made liable for any tax * * * shall make a return * * * according to the forms and regulations prescribed by the Secretary."  A return required to be made "shall contain or be verified by a written declaration that it is made under the penalties of perjury."  Sec. 6065.  Section 6061 provides that "any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary."  The regulations promulgated under section 6061 provide:  "Each individual * * * shall sign the income tax return required to be made by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a)(5) or (b) of § 1.6012-1 to make such return."  Sec. 1.6061-1(a),

[*10] Income Tax Regs.[2]  Section 1.6012-1(a)(5), Income Tax Regs., provides that a return may be made by an agent if the taxpayer is unable to make the return by reason of disease, injury, or continuous absence from the United States, or if, upon a showing of good cause, the taxpayer obtains permission from the IRS.  The regulation continues:  "Whenever a return is made by an agent it must be accompanied by a power of attorney (or copy thereof) authorizing him to represent his principal in making, executing, or filing the return.  A Form 2848, when properly completed, is sufficient."  Id.

"Failure to satisfy the requirements for filing a return is fatal to the validity and the timeliness of the return."  Elliott v. Commissioner, 113 T.C. 125, 128 (1999).  In Elliott, we considered whether a return submitted in the taxpayer's name to the IRS and signed only by the taxpayer's attorney was sufficient to begin the running of the section 6501 period of limitations on assessment and collection of tax.  No Form 2848 or other power of attorney accompanied the return.  We framed the question before us as "whether the Form 1040 submitted by * * * [the taxpayer's attorney] constitutes a return."  Id.  We stated:  "Petitioner did not sign

---

[2]Sec. 1.6012-1(b), Income Tax Regs., applies to returns of nonresident alien individuals and is not relevant here.

**[*11]** the form and the execution of the form by * * * [the taxpayer's attorney] did not satisfy the signature requirements of the regulations for signing a return by an agent. In particular there was no power of attorney attached to the return". Id. We concluded: "The Form 1040 submitted * * * [by the taxpayer's attorney] did not constitute a signed return under section 1.6012-1(a)(5), Income Tax Regs." Id. at 129; see also Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249 (1930); Richardson v. Commissioner, 72 T.C. 818, 823 (1979) ("It is well established that the filing of an unsigned return form is not the filing of a return and does not start the running of the statute of limitations against respondent.").

While most of the authority holds that an unsigned return is not a return for purposes of determining whether the period of limitations on assessment and collection has begun to run, neither may an unsigned return be considered a return for purposes of section 6664(b), which, in pertinent part, provides: "The penalties provided in this part shall apply only in cases where a return of tax is filed". See McGee v. Commissioner, T.C. Memo. 2000-308, 2000 WL 1434240, at *1 n.4 (holding section 6663(a) fraud penalty was inapplicable because the taxpayer filed no return; the return signed in his name by his employee was invalid); cf. Sakkis v. Commissioner, T.C. Memo. 2010-256, 2010 WL 4806895, at *7 (applying the Supreme Court precedent defining a valid tax return for statute of limitations

[*12] purposes to determine that a document was sufficient to avoid the section 6651(f) addition to tax for fraudulent failure to file but not to avoid exposing the taxpayer to the section 6663(a) penalty for filing a fraudulent return).

Moreover, an invalid return remains invalid even if the IRS accepts and processes it. See, e.g., Olpin v. Commissioner, 270 F.3d 1297, 1301 (10th Cir. 2001) ("[A]cceptance cannot cure an invalid return[.]"), aff'g T.C. Memo. 1999-426; Downing v. Commissioner, T.C. Memo. 2007-291, 2007 WL 2768754, at *10 (holding IRS acceptance of return and payment "would not waive the statutory requirements for a valid return"); Julicher v. Commissioner, T.C. Memo. 2002-55, 2002 WL 273165, at *14 ("[T]he signature requirement for purposes of a valid joint return may not be waived by Internal Revenue Service personnel.").[3]

In the case before us, Mr. Hagnour, and not petitioner, signed the 2007 return. And while petitioner's absence from the country may have satisfied one of the conditions enumerated in section 1.6012-1(a)(5), Income Tax Regs., no Form

---

[3]We note as further evidence of the nondiscretionary nature of the signature requirement that sec. 6061(b)(1)(A) permits the Secretary to "waive the requirement of a signature" until procedures to accept digital or electronic signatures have been developed. The implication is that, absent this express grant of authority, the authority to waive the signature requirement would not exist. Otherwise, the provision is superfluous.

**[*13]** 2848 authorizing Mr. Hagnour to sign it on petitioner's behalf accompanied the 2007 return. Therefore, the 2007 return was not a valid return.

     C.    <u>Form 870 Not a Return</u>

Respondent argues that petitioner "tacitly acknowledged the contents and submission of the 2007 1040 income tax return filed with respondent as petitioner's income tax return" when Mr. Dolchin signed the Form 870 on petitioner's behalf. Respondent cites no authority holding that a Form 870 may satisfy the return requirement, and our cases have previously found similar IRS waiver forms to be similarly lacking. <u>See, e.g.</u>, <u>Deutsch v. Commissioner</u>, T.C. Memo. 2006-27, 2006 WL 345848, at *5 (holding Forms 4549, Income Tax Examination Changes, "were not returns because, among other reasons, they were not signed under penalty of perjury."), <u>aff'd</u>, 478 F.3d 450 (2d Cir. 2007).

The Form 870 is not a return. It does not purport to be a tax return, and it is not executed under penalty of perjury. <u>See</u> sec. 6065; <u>see also</u> <u>Beard v. Commissioner</u>, 82 T.C. 766, 777 (1984) (stating that a document will be treated as a valid return if, among other things, it purports to be a return and is executed under penalties of perjury), <u>aff'd</u>, 793 F.2d 139 (6th Cir. 1986). Rather, a Form 870 is merely a waiver of certain rights of the taxpayer (specifically, the right to receive a statutory notice of deficiency and the right to challenge the assessment

[*14] therein in the United States Tax Court).  See, e.g., Phila. & Reading Corp. v.
United States, 944 F.2d 1063, 1067 (3d Cir. 1991); Nichols v. Commissioner, T.C.
Memo. 2007-5, 2007 WL 79247, at *3.  By executing the Form 870, petitioner has
waived his right to challenge the deficiencies asserted therein.  He has not,
however, filed a return.

    D.    No Delinquency Addition

    1.    Introduction

In his answering brief, respondent contends that, because of section 6651(f),
petitioner's failure to sign the 2007 return is irrelevant.  Section 6651(a)(1)
provides for an addition to tax (sometimes, delinquency addition) in the event a
taxpayer fails to file a timely return unless the taxpayer can show that the failure is
due to reasonable cause and not due to willful neglect.  The addition is a
percentage of the amount required to be shown as tax on the delinquent return for
each month, up to five, that the return is delinquent.  Normally, the addition is 5%
a month, and it cannot exceed 25% of the amount of tax required to be shown.  Id.
If any failure to file any return is fraudulent, however, section 6651(f) increases
the monthly addition to 15%, and it increases the maximum addition to 75% of the

**[*15]** amount of tax required to be shown.  In relevant part, section 6651 is set forth in the margin.[4]

Respondent did not in the notice determine a delinquency addition. Nevertheless, section 6214(a) establishes that, along with our jurisdiction to redetermine deficiencies, we have jurisdiction, "<u>if claim therefor is asserted by the Secretary at or before the hearing or a rehearing</u>" (emphasis added), "to determine

---

[4]SEC. 6651.  FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a)  Addition to Tax.--In case of failure--

(1) to file any return required under authority of subchapter A of chapter 61 * * * , on the date prescribed therefor * * * , unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

*        *        *        *        *        *        *

(f)  Increase in Penalty for Fraudulent Failure To File.--If any failure to file any return is fraudulent, paragraph (1) of subsection (a) shall be applied--

(1) by substituting "15 percent" for "5 percent" each place it appears, and

(2) by substituting "75 percent" for "25 percent".

**[\*16]** whether any additional amount, or any addition to the tax should be assessed". Respondent could have claimed a delinquency addition in the answer, but he did not. Understandably, that may be because, when he filed the answer, respondent did not consider that the 2007 return might be invalid. Failure to raise an issue in a pleading, however, is not fatal. If an issue is tried by express or implied consent of the parties, our Rules treat it as if it had been raised in a pleading. See Rule 41(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). If a party wishes (for instance, to ensure that the Court recognizes that an issue not actually pleaded has been tried), he may move to conform the pleadings to the evidence and to raise the issue. See id. Respondent made no such motion. We must thus consider whether the issue of a delinquency addition was tried by express or implicit agreement of the parties. Respondent first raised section 6651(f) in his answering brief, in support of his relevance objection to petitioner's proposed finding that Mr. Mantecon identified Mr. Hagnour as having signed the 2007 return. Respondent states: "If petitioner had not filed a 2007 federal income tax return, petitioner still would have been liable for civil fraud." He cites as authority for that claim Lain v. Commissioner, T.C. Memo. 2012-99, 2012 WL 1129851, at \*4, quoting it as follows: "In

[*17] ascertaining whether petitioner's failure to file was fraudulent under section 6651(f), the Court considers the same elements that are considered in imposing the fraud penalty under section 6663 and former section 6653(b)."

While we have said that, or something similar, on other occasions, see, e.g., Clayton v. Commissioner, 102 T.C. 632, 653 (1994) (the source of the statement in Lain), such statements may lead to the erroneous conclusion that the evidence necessary to prove a section 6663(a) fraudulent underpayment of tax is not different from the evidence necessary to prove a delinquency addition under section 6651(a) and (f) for fraudulent failure to file a return (sometimes, simply, a section 6651(f) addition). For example, in one Memorandum Opinion, Harvey v. Commissioner, T.C. Memo. 1999-229, 1999 WL 482626, we sustained the Commissioner's determination of a section 6663(a) fraud penalty for a year for which the taxpayer did not file a return. In a footnote, we stated: "Petitioner did not file a return for 1989. Accordingly, the fraud penalty should be under sec. 6651(f) for fraudulent failure to file, not under sec. 6663. The latter section applies only where a return is filed. See sec. 6664(b). This is an error in form only and does not have a substantive effect on these cases." Id., 1999 WL 482626,

**[\*18]** at \*1 n.2 (emphasis added).[5]  Because one might conclude from some of our cases addressing section 6651(f) that we do not distinguish between what must be proved to sustain a section 6651(f) addition and what must be proved to sustain a section 6663(a) penalty, we do not find that, with respect to 2007, respondent failed to plead or to raise a section 6651(f) addition.

Nevertheless, for the reasons that follow, we do not sustain that addition. As a preliminary matter, we note the Commissioner has the burden to prove fraud by clear and convincing evidence.  See sec. 7454(a); Rule 142(b).  That is true with respect to the fraud element of section 6651(f).  Clayton v. Commissioner, 102 T.C. at 652-653; Reedy v. Commissioner, T.C. Memo. 2008-100, 2008 WL 1734175, at \*5.

---

[5]The record contains a copy of our decision, in which, for 1989, we decided that the taxpayer was liable for a sec. 6663(a) penalty in the amount determined by the Commissioner in the notice.  We did not either in the decision or in our report consider that, as discussed infra, the base of a delinquency addition is different from the base of the sec. 6663(a) fraud penalty.

In McGee v. Commissioner, T.C. Memo. 2000-308, the Commissioner determined a sec. 6663(a) fraud penalty for 1989, a year for which, because someone else had signed the taxpayer's return, the return was invalid.  We sustained a sec. 6651(f) addition, nonetheless (and not a sec. 6663(a) fraud penalty).  Apparently, the Commissioner had discovered the defect in the return in time to raise the sec. 6651(f) addition in his trial memorandum.  We concluded that new issues raised by the Commissioner in his trial memorandum had been tried by express or implied consent of the parties pursuant to Rule 41(b)(1).

**[*19]**       2.       Elements Necessary To Sustain Delinquency Addition Differ
                         From Elements Necessary To Prove Fraudulent Underpayment

That there are differences between the elements necessary to sustain a

delinquency addition (whether fraudulent or not) and to prove a section 6663(a)

fraudulent underpayment is plain from the two provisions.  While both sections

6651(f) and 6663(a) penalize fraud, the base for a delinquency addition is the

amount required to be shown on the delinquent return (reduced by section

6651(b)(1) for the amounts of any prepayments or credits), while the base--the

"underpayment"--for the section 6663(a) penalty is, in general, the <u>excess</u> of the

amount of tax due <u>over</u> the amount of tax shown on the fraudulent return.  <u>See</u> sec.

6664(a).  Respondent represents, and we see no reason to disagree, that, had he

determined that petitioner filed no 2007 return, he would have determined a

section 6651(f) addition that would have exceeded the section 6663(a) penalty that

he did determine (apparently because the 2007 return shows a significant amount

of tax due, $337,906, and a withholding credit of only $14,628).  In short, an

underpayment, as that term is defined in section 6664(a), while an element of the

section 6663(a) penalty, is no element of any delinquency addition.

Other elements of the two provisions also differ.  A taxpayer who files no

return can attract no section 6663(a) penalty.  Sec. 6664(b).  To the contrary, a

[*20] taxpayer can attract a section 6651(f) addition only if he fails to file a timely return, and then only if the delinquency is fraudulent. Thus, delinquency is a necessary element of a section 6651(f) addition, and, while delinquency may play some role in determining whether a taxpayer fraudulently underpaid his tax, delinquency is unnecessary to prove a fraudulent underpayment.

Admittedly, fraud is an element common to both offenses. Fraud is defined in Black's Law Dictionary 731 (9th ed. 2009) as: "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." We often define fraud for tax purposes as "an intentional wrongdoing designed to evade tax believed to be owing." E.g., DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). We have described the necessary wrongdoing as "conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." E.g., id. Common to all three definitions is the element of deliberateness; e.g., a "knowing misrepresentation of the truth or concealment of a material fact". Black's Law Dictionary 731 (emphasis added). In the tax context, the knowing misrepresentation or concealment must be "to evade tax believed to be owing." DiLeo v. Commissioner, 96 T.C. at 874. Section 6663(a) imposes a fraud penalty for a knowing misrepresentation of the truth in order to evade tax. The penalty is imposed only if a taxpayer files a return and

**[\*21]** only if, on that return, the taxpayer fraudulently (knowingly and with the intent to evade tax) shows less than (<u>misrepresents</u>) the amount of the tax due. In section 6651(f), the adjective "fraudulent" modifies the noun "failure" ("If any failure to file any return is fraudulent"). The offense involves a knowing <u>concealment</u> of a material fact in order to evade tax. The penalty is imposed only if the taxpayer fails to file his return when due (thus <u>concealing</u> a material fact (that he has income subject to tax)) and only if he does so <u>knowing</u> that he is concealing that material fact. The taxpayer must <u>deliberately</u> fail to file his return on the date due, knowing that, by doing so, he is concealing the fact that he has income subject to tax.[6] See <u>Bennett v. Commissioner</u>, 30 T.C. 114, 120, 122 (1958) (sustaining additions to tax for fraud since "the failure of petitioners to file returns for each of those years was deliberate and due to fraud with intent to evade tax"); <u>see also</u> <u>McGee v. Commissioner</u>, 2000 WL 1434240, at \*14 (sustaining

---

[6]The delinquency addition, whether increased or not, is a time-sensitive addition, the accrual of which is curtailed if the taxpayer, within the statutory maximum period (five months), files the delinquent return. Thus, while the taxpayer's failure to file a delinquent return continues throughout the period of delinquency, it is his failure "on the date prescribed \* \* \* [to file any return]" that begins accrual of the delinquency addition. Sec. 6651(a)(1). If the sec. 6651(f) increased rates for a fraudulent failure to file are to be substituted for the normal rates, then the taxpayer's fraudulent state of mind on the date prescribed to file the return must be determined, and the fact that the increased addition will continue to accrue for as many as five months is beside the point.

[*22] section 6651(f) addition on finding that the taxpayer had "willfully" failed to file timely his 1989 tax return and that his pattern of failing to file was persuasive evidence of fraud). In Enayat v. Commissioner, T.C. Memo. 2009-257, 2009 WL 3763085, at *24 (emphasis added), we stated the necessary inquiry as follows:

> To determine whether * * * [taxpayer corporation] fraudulently failed to file its tax return for taxable year 1999, we examine the same badges of fraud we used when considering the imposition of the fraud penalty * * * under section 6663(a), * * * but we necessarily focus on Woodbury's decision not to file its return when due. If that decision was made with the intent to evade tax, then the addition to tax under section 6651(f) may properly be imposed. * * *

No delinquency addition will attach to a delinquent return if the taxpayer can show reasonable cause for the delinquency and lack of willful neglect. See sec. 6651(a)(1). Section 6651(f) serves only to increase the percentages taken into account in determining a delinquency addition; it does not change the incidence of the addition. See supra note 4. Thus, a taxpayer who can show that his delinquency was due to reasonable cause and not due to willful neglect will escape any delinquency addition, increased or otherwise. A taxpayer may have an evil heart, intending to cheat the Government out of its due tax by filing a fraudulent return, but if he can show that the delinquency in filing his return was due to reasonable cause and not due to willful neglect, he will owe no delinquency addition. See sec. 6651(a)(1).

[*23] Internal Revenue Manual ex. 3.12.3-9 (Jan. 1, 2013) addresses reasonable cause for late filing or late payment.  It includes as two examples of reasonable cause:  serious injury of the taxpayer and the mailing by the taxpayer of his return in time to reach the IRS within the prescribed time, which return, through no fault of the taxpayer's, fails to reach the IRS within that time.  A fraudulently minded taxpayer who is on his way to the post office to mail his return in good time for the IRS to receive it before the due date may, without fault on his part, be hit by a bus and hospitalized, so that he is unable to file the return until after the due date.  He has reasonable cause for the delay, and his failure timely to file is not due to willful neglect.  The conclusion would be the same if the taxpayer had properly mailed his return in plenty of time for the IRS to receive it before the due date, but it was never delivered.  In neither situation is the taxpayer subject to a section 6651(f) fraud addition, nor, indeed, is he subject to any delinquency addition, notwithstanding his clear intent to file a fraudulent return.

The point to be taken is that intent to file a fraudulent return is not sufficient to trigger a section 6651(f) addition.  If it were, reasonable cause and lack of willful neglect would not be defenses, which, clearly, they are.  A taxpayer intending to file a fraudulent return may be willfully neglectful in failing to file it on time, and for that he should be subject to a delinquency addition.  But unless

[*24] his failure to file on time is due to <u>more</u> than willful neglect, i.e., is deliberate and intended to conceal the fact that he has income subject to tax, the delinquency addition cannot be imposed at the increased percentages provided for in section 6651(f).[7]  Respondent has not in this case asked that, for 2007, the delinquency addition be imposed at the unincreased percentages provided for in section 6651(a).  Had he done so, it is likely that we would have sustained that addition.

Finally, we have not been consistent in saying, as we did in <u>Clayton v. Commissioner</u>, 102 T.C. at 653, and <u>Lain v. Commissioner</u>, T.C. Memo. 2012-99, that, in applying section 6651(f) to determine whether a taxpayer's failure to file his return was fraudulent, we consider the same elements that we consider in applying section 6663(a).  In <u>Christianson v. Commissioner</u>, T.C. Memo. 1999-99, 1999 WL 171434, <u>rev'd on other grounds</u>, 1 Fed. Appx. 704 (9th Cir. 2001), we recognized dissimilarities between the two provisions.  There we said:

---

[7]The necessity for the Commissioner to show a deliberate (intentional) delinquency in order for us to sustain a sec. 6651(f) addition is illustrated by the identical language that, recently, in two Memorandum Opinions, we used to describe what he must prove to sustain his determination of a sec. 6651(f) addition:  "Respondent must establish by clear and convincing evidence that petitioner's <u>failure</u> to timely file was an <u>intentional</u> attempt to evade tax believed to be owing."  <u>Nix v. Commissioner</u>, T.C. Memo. 2012-304, at *8 (emphasis added); <u>Herrington v. Commissioner</u>, T.C. Memo. 2011-73, 2011 WL 1235720, at *6 (emphasis added).

**[\*25]** In order for the additions to tax for fraudulent failure to file under section 6651(f) to apply, we must consider <u>essentially</u> those same elements [as necessary to prove fraud for purposes of section 6663(a)]. <u>See</u> <u>Clayton v. Commissioner</u>, 102 T.C. 632, 653 (1994). Respondent must prove under section 6651(f) that petitioner's tax liability for each year at issue exceeds her prepayment credits <u>and that her failure to file a return for each such year was due to fraud.</u> <u>See</u> secs. 7454(a), 6651(a), (b)(1); Rule 142(b); <u>see also</u> <u>Clayton v. Commissioner</u>, <u>supra</u>. \* \* \*

<u>Id.</u>, 1999 WL 171434, at \*7 (emphasis added).

### 3. Rule of Lenity

Any inclination that we might have to read section 6651(f) expansively must give way to the rule of lenity. The rule of lenity is an interpretive canon that may be expressed as follows: "Ambiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 296 (2012). For many years, the Supreme Court of the United States subjected tax laws to the same or a similar canon, holding that "[i]n [the] case of doubt \* \* \* [statutes levying taxes] are construed most strongly against the government, and in favor of the citizen." <u>Gould v. Gould</u>, 245 U.S. 151, 153 (1917); <u>see also</u> Scalia & Garner, <u>supra</u>, at 299. The application of that strict-construction canon to tax law no longer enjoys universal approval. See the cases noted at Scalia & Garner, <u>supra</u>, at 300 n.19. Nevertheless, notwithstanding that lack of universal approval, since

[*26] section 6651(f) imposes an addition to tax (indeed, the addition to tax is described in the heading to subsection (f) as an "[i]ncrease in penalty"), any ambiguity in its application is resolved by the rule of lenity. See, e.g., Commissioner v. Acker, 361 U.S. 87, 91 (1959) (addressing an addition to tax imposed by section 294(d)(2) of the 1939 Internal Revenue Code for substantial underestimation of tax). The Court stated:

> We are here concerned with a taxing Act which imposes a penalty. * * * The law is settled that "penal statutes are to be construed strictly," Federal Communications Comm'n v. American Broadcasting Co., 347 U. S. 284, 296, and that one "is not to be subjected to a penalty unless the words of the statute plainly impose it," Keppel v. Tiffin Savings Bank, 197 U. S. 356, 362. See, e.g., Tiffany v. National Bank of Missouri, 18 Wall. 409, 410; Elliott v. Railroad Co., 99 U. S. 573, 576.

Id.; see also Ivan Allen Co. v. United States, 422 U.S. 617, 626 (1975) ("The tax * * * [is] a penalty and therefore to be strictly construed[.]"); Wood v. Commissioner, 95 T.C. 364, 372 (1990) (stating as a principle of statutory construction, citing Acker: "penalty provisions must be strictly construed"), rev'd on other grounds, 955 F.2d 908 (4th Cir. 1992). Moreover, because petitioner resides abroad, and barring written stipulation to the contrary, venue for appeal of this case is likely the Court of Appeals for the District of Columbia Circuit. See sec. 7482(b). That Court of Appeals appears still to follow the strict construction

**[\*27]** rule described in <u>Gould</u>. <u>See</u> <u>Murphy v. IRS</u>, 493 F.3d 170, 179 (D.C. Cir. 2007) ("an ambiguity in the meaning of a revenue-raising statute should be resolved in favor of the taxpayer", citing, among other authorities, <u>Gould</u>); <u>see also</u> <u>Royal Caribbean Cruises, Ltd. v. United States</u>, 108 F.3d 290, 294 (11th Cir. 1997) (interpreting statutory terms in question "consistent with the general rule of construction that ambiguous tax statutes are to be construed against the government and in favor of the taxpayer", also citing, among other authorities, <u>Gould</u>). Any attempt by us to conflate section 6651(f) with section 6663(a), or to impose a section 6651(f) addition on a nondeliberate delinquency, would run afoul of the rule of lenity.

4. <u>Clayton v. Commissioner</u>

In <u>Clayton v. Commissioner</u>, 102 T.C. at 651-653, the taxpayers deliberately filed their 1990 income tax return after the April 15, 1991, due date for that return pursuant to an automatic extension of time to file, which we found a nullity since, on their application for it, they estimated their 1990 tax liability to be zero--"a knowing misrepresentation of the true facts." Disregarding the extensions they had obtained, we first held that they had not timely filed their 1990 return. "[N]ow", we said, "[w]e * * * turn to the question of whether such failure to file was fraudulent under section 6651(f)." <u>Id.</u> at 651. Also on the basis of their

[*28] misrepresentation on the extension application, we found that the taxpayers' failure to timely file their 1990 income tax return was "a flagrant effort at concealment on their part" and, thus, fraudulent pursuant to section 6651(f). Id. at 653. In Clayton, first, we found that the taxpayers deliberately failed to file their return when it was due; second, we found that they did so with intent to evade tax.

Section 6651(f) was a relatively new and little-examined provision when we decided Clayton, and, before addressing whether the taxpayer's failure to file was fraudulent under that provision, we looked for an explanation of how that new provision fit with the then recently modified penalties for negligence and fraud. Section 6651(f) had been added to the Code by the Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. No. 101-239, sec. 7741(a),103 Stat. at 2404. H.R. Rept. No. 101-247 (1989), 1989 U.S.C.C.A.N. 1906 (House report), is the report of the Committee on the Budget to accompany H.R. 3299, 101st Cong., 1st. Sess. (1989), which, as enacted, became OBRA. In part, we quoted the House report as follows:

> "The committee has made this modification to improve the coordination of the failure to file penalty with the accuracy-related penalties. The committee intends that the courts and the IRS should consider the same elements when considering the imposition of this new aspect of the penalty as is done under present law when considering imposition of the 6653 penalty where there has been a failure to file a return. Thus, the actions or behavior that trigger the

**[*29]** penalty under the bill are to be the same as those under present law."

Clayton v. Commissioner, 102 T.C. at 652.  Soon after quoting that paragraph, we said that, "in applying section 6651(f) to determine whether petitioners' failure to file their 1990 return was fraudulent, we must consider the same elements as is done when considering the * * * [section 6663(a) fraud penalty]".  Id. at 653.  The elements necessary to sustain a section 6651(f) addition are, as outlined above, different from the elements necessary to sustain a section 6663(a) fraud penalty.[8]  Our statement in Clayton properly may be considered as addressing only the nature of the fraudulent purpose that must accompany wrongful conduct--i.e., the

--------

[8]By the Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. No. 101-239, sec. 7741(a), 103 Stat. at 2404, Congress separated the delinquency offense (now, sec. 6651(f)) from the fraudulent underpayment offense (now, sec. 6663(a)), but it did not coordinate the two new provisions, so that the outcome under prior law does not in all cases persist.  Under prior law (pre-OBRA sec. 6653), although a taxpayer could be subject to both the delinquency addition and either a negligence or fraud addition, see, e.g., Caparaso v. Commissioner, T.C. Memo. 1993-255, sec. 6653 did not allow a double counting for delinquency and for fraud, pre-OBRA sec. 6653(d).  Under the present scheme, however, a taxpayer whose return is delinquent on account of fraud is potentially subject to two fraud penalties:  one related to the amount of tax that should have been shown on the return, under sec. 6651(f), and another related to any underpayment, under sec. 6663(a).  Respondent's administrative guidance, the Internal Revenue Manual (IRM), instructs that a sec. 6651(f) addition and a sec. 6663(a) penalty can be asserted with respect to the same return.  IRM pt. 20.1.2.2.7.5(5) (Apr. 19, 2011); see also IRM pt. 20.1.5.14.2(6) (Jan. 24, 2012).  The point that both provisions can apply is also made in Ian M. Comisky, Lawrence S. Feld, & Steven M. Harris, Tax Fraud and Evasion, para. 8.02 n.299 (6th ed. 2003).

[*30] intent to conceal, mislead, or otherwise prevent the collection of tax. It is, as such, a correct statement of the law. It is correct both when determining a fraudulent underpayment and when determining a fraudulent failure to file. Any broader interpretation would, as discussed above, have to give way to the rule of lenity. There is no reason we may not continue to rely on Clayton as authoritative precedent.

       5.     The 2007 Return

Since the 2007 return was not a valid return, petitioner failed to file a 2007 return. To determine whether that 2007 failure to file was fraudulent, we consider all the evidence, circumstantial and otherwise, that constitutes "badges of fraud" in connection with petitioner's acts and omissions with respect to his obligation to file a 2007 return. While the evidence may be sufficient to find that petitioner intended to file a fraudulent return for 2007 (as we find he intended for 2006) but failed to do so, the evidence is insufficient for us to conclude that petitioner employed Mr. Hagnour in a deliberate attempt to file a purported return that, if respondent examined it and charged him with fraudulent underpayment of tax, petitioner could then disavow. And while, if that intent were shown, it likely would be sufficient to subject a taxpayer to a section 6651(f) addition, that is not this case. Mr. Mantecon testified that Mr. Hagnour routinely acted for petitioner

[*31] when he was unavailable. That testimony is as consistent with the conclusion that petitioner wished to make a 2007 return, and wished to do so on time, as it is consistent with anything else. Respondent has not carried his burden of clearly and convincingly showing us that petitioner deliberately decided not to file his 2007 return when it was due. For that reason, on the record before us, we cannot, impose on petitioner a section 6651(f) addition for 2007.

E. Conclusion

Because petitioner did not file a valid tax return for 2007, he is not liable for the section 6663(a) fraud penalty for that year. See sec. 6664(b). Nor is he liable for a section 6651(f) addition.

III. 2006

A. Introduction

Petitioner filed a return for 2006 and concedes that he underpaid his 2006 tax. Petitioner is liable for the section 6663 fraud penalty if any part of that underpayment is due to fraud. See sec. 6663(a). "Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing." Neely v. Commissioner, 116 T.C. 79, 86 (2001). As discussed supra, respondent bears the burden of proving fraud and must prove it by clear and convincing evidence. Since petitioner concedes that he underpaid his 2006 tax, respondent's only burden

**[\*32]** is to show by clear and convincing evidence that at least some part of petitioner's 2006 underpayment is due to fraud. See DiLeo v. Commissioner, 96 T.C. at 873. If respondent establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment that petitioner establishes (by a preponderance of the evidence) is not attributable to fraud. See sec. 6663(b).

    B.    <u>Fraudulent Intent</u>

To prove fraud, respondent must show petitioner's state of mind; to wit, whether he intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax. See, e.g., Scott v. Commissioner, T.C. Memo. 2012-65, 2012 WL 798039, at \*10. A fraudulent state of mind may be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. See DiLeo v. Commissioner, 96 T.C. at 874.

Courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. Those badges of fraud include: (1) understating income; (2) maintaining inadequate records; (3) implausible or inconsistent explanations of behavior; (4) concealment of income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) an intent to mislead; (8) lack of credibility of the taxpayer's testimony; (9) filing false documents; (10) failing to

[*33] file tax returns; and (11) dealing in cash. E.g., Holmes v. Commissioner, T.C. Memo. 2012-251, at *31. A failure to be forthright with one's return preparer is also an indication of fraud. E.g., Langworthy v. Commissioner, T.C. Memo. 1998-218, 1998 WL 325623, at *7. Although no single factor is necessarily sufficient to establish fraud, a combination of factors is more likely to constitute persuasive evidence. Holmes v. Commissioner, at *31. The taxpayer's intelligence, education, and tax expertise are also relevant for purposes of determining fraudulent intent. Id.

On examination of the entire record, we find that respondent has established by clear and convincing evidence that petitioner had the requisite fraudulent intent. First, petitioner has conceded that he underreported his income by more than $1.8 million over the two-year period at issue. See, e.g., Delvecchio v. Commissioner, T.C. Memo. 2001-130, 2001 WL 617192, at *5 ("Two years of substantial understatement may support a finding of fraud."), aff'd, 37 Fed. Appx. 979 (11th Cir. 2002). While we have found that petitioner failed to file a return for 2007, the circumstances leading to that finding cause us to give it little account in determining his fraudulent intent for 2006.

Next, petitioner was involved in illegal activities and efforts to conceal his income from the authorities. Petitioner was closely involved in a large-scale

[*34] criminal enterprise to defraud the Florida State government of sales tax revenue and to launder money out of the United States. Petitioner is subject to outstanding arrest warrants for numerous crimes, most of which arise from the same transactions at issue here. Although, as petitioner correctly asserts, he has not been convicted of these crimes, our cases have found involvement in illegal activity to be a strong indicium of fraud even where the taxpayer has not been criminally convicted. See, e.g., Clayton v. Commissioner, 102 T.C. at 647 (taxpayer's engaging in illegal bookmaking found to be ample evidence of illegal activity, even though charges against him were dropped). Moreover, we draw a negative inference from petitioner's decision to flee the country rather than face those charges. See Campbell v. Commissioner, T.C. Memo. 1979-346, 1979 WL 3404 (the taxpayer's status as a fugitive, while not conclusive evidence of fraud in the absence of a conviction, "cast[s] suspicion on the validity of his case").

Further, petitioner provided false information to Mr. Mantecon, his tax return preparer, who prepared the 2006 return on the basis of that false information. Petitioner was aware of his corporations' actual sales figures, as evidenced by his close observation of the stores' activities and his notations in the accounting ledgers, but severely understated those figures to Mr. Mantecon.

[*35] Petitioner then signed the return, aware that it was prepared with the false numbers he provided, and submitted the return to the IRS.

Petitioner, an obviously intelligent individual who oversaw the operations of seven corporations, knowingly provided false sales figures to his tax preparer while concealing and laundering large amounts of cash to be delivered to him out of the United States. When authorities became aware of petitioner's operations, he chose to live outside the United States as a fugitive, rather than stand and face the charges against him. On the basis of the factors above, we conclude that respondent has shown by clear and convincing evidence that petitioner filed a fraudulent tax return for 2006 with intent to conceal, mislead, or otherwise prevent the collection of tax, and we so find.

### C. Mitigation

Once the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud. Sec. 6663(b). In an apparent attempt at mitigation, petitioner argues that he did not personally report all of the monthly sales figures to Mr. Mantecon. Mr. Mantecon did, indeed, testify that, perhaps, when petitioner was out of town, one of his

[*36] associates reported sales figures to him. If those reports were accurate, then, assumably, they did not contribute to petitioner's underpayment of tax and do not figure in the fraud penalty. If, on net, the reports by petitioner's associates did contribute to petitioner's 2006 underpayment of tax, then he must show by a preponderance of the evidence that any underpayment resulting from the associates' reports was not due to fraud. He has failed to do so. The evidence supports a finding that very little went on with respect to the operations, finances, and financial reporting of petitioner's corporations of which he was not aware. If petitioner's associates reported monthly sales figures to Mr. Mantecon, we assume that petitioner was aware of the amounts reported.

D.     Conclusion

Respondent has by clear and convincing evidence shown that petitioner both underpaid his 2006 tax liability and did so with fraudulent intent. The fraud penalty applies to the entirety of petitioner's underpayment for 2006.

**[*37]** IV.   <u>Conclusion</u>

Petitioner is liable for the section 6663(a) fraud penalty for 2006.  Petitioner is not liable for a section 6651(f) addition for 2007.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.